Miscellaneous Docket No. \_\_\_\_

In the
# United States Court of Appeals for the Federal Circuit

IN RE VIGILANT VIDEO, INC.
and THE CITY OF PORT ARTHUR, TEXAS,

*Petitioners.*

*Petition for Writ of Mandamus to the United States District Court*
*for the Eastern District of Texas in Case No. 2:10-cv-173-JRG*
*Judge Rodney Gilstrap*

**PETITION FOR WRIT OF MANDAMUS OF VIGILANT VIDEO, INC.
and THE CITY OF PORT ARTHUR, TEXAS**

THOMPSON BOGRÁN, P.C.
Roy B. Thompson
Oregon State Bar # 82501
New York State Bar # 1891399
15938 Quarry Road, Suite B-6
Lake Oswego, OR 97035
Telephone:  503-245-6600
Cellphone:  503-381-9945
Facsimile:  503-244-8399
E-mail:       roythompson@comcast.net

*Attorney for Petitioners Vigilant Video, Inc.*
*and City of Port Arthur, Texas*

# CERTIFICATE OF INTEREST

Counsel for the Petitioners, Vigilant Video, Inc. and City of Port Arthur, Texas, certify:

1.    The full name of every party or amicus represented by me are:

Vigilant Video, Inc.
>    Vigilant Video's corporate name has been changed to Vigilant Solutions, Inc., but is referred to in the pleadings as Vigilant Video.

City of Port Arthur, Texas

2.    The names of the real parties in interest represented by me are:

Vigilant Video, Inc.

City of Port Arthur, Texas

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

>    There are no parent corporations or any publicly held companies that own 10 percent or more of the stock of the parties represented by me.

4.    The names of all law firms, partners or associates that appeared for the parties represented by me in the trial court or expected to appear in this court:

THOMPSON BOGRÁN, P.C.:  Roy B. Thompson

POLASEK QUISENBERRY & ERRINGTON, LLP:  C. Dale Quisenberry, John T. Polasek, Jeffrey Scott David

CAPSHAW DERIEUX, LLP:  Elizabeth L. DeRieux

DATE: August 2, 2013.               */s/ Roy B. Thompson*
                                    Roy B. Thompson
                                    Counsel for Petitioners

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    <u>Denial of Motion for Summary Judgment for Claim 6 and 2</u> . . . . . . . 2

    2.    <u>Denial of Motion for Summary Judgment as to Claims 30-32,<br>35-39, and 41-42</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF REASONS A WRIT SHOULD ISSUE . . . . . . . . . . . . . . . . . 9

    I.    Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    Standard for Mandamus Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    <u>District Court's Failure to Grant Summary Judgement<br>Due to Failure to Apply Amended Claim 2 as Set Forth<br>in USPTO Reexamination Certificate</u> . . . . . . . . . . . . . . . . . . . 9

            *A.*    *Applicable Circuit Court Law* . . . . . . . . . . . . . . . . . . . 9

            *B.*    *District Court's Failure to Apply USPTO Ruling.* . . . 10

        2.    <u>District Court's Refusal to Comply with Fed. R. Civ. P. 56.</u> . 18

            *A.*    *Applicable Circuit Court Law.* . . . . . . . . . . . . . . . . . . 18

   B.    District Court's Refusal to Comply with Fed. R.
         Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

EXHIBITS IN SUPPORT OF PETITION

1.    First Amended Complaint for Patent Infringement filed July 8, 2013
      (D.E. 234) with U.S. Patent 5,831,699 attached.

2.    Defendants' Joint Motion for Summary Judgment filed
      November 30, 2011 (D.E. 126)

3.    Memorandum Opinion and Order filed May 13, 2013 (D.E. 181)

4.    Exhibit A: June 26, 2013 USPTO Office Order Granting
      Reexamination of U.S. Patent No. 5,831,699 (D.E. 248-1)

5.    Defendants' Motion for Reconsideration of the Court's May 14,
      2013 Memorandum and Order (Dkt. No. 181) filed May 21,
      2913 (D.E. 202)

6.    Order on Motions and Amendment to the Docket filed July 8,
      2013 (D.E. 233)

7.    Defendants' Notice of Compliance with the Court's Order
      Regarding Summary Judgment Motions filed June 28, 2013
      (D.E. 226) with Exhibit A, June 28, 2013 Letter attached

8.    U.S. District Court for the Eastern District of Texas Standing
      Order Regarding Submission of Letter Briefs for Cases
      Assigned to Judge Rodney Gilstrap and Judge Roy S. Payne

9.    Order filed July 8, 2013 (D.E. 235)

10.   Docket Control Order filed March 3, 2011 (D.E. 49)

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Page(s)*

### *Cases*

*Allied Chem. Corp. v. Daiflon, Inc.,*
  449 U.S. 33 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,*
  402 US. 313 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chem. Corp. v. Daiflon, Inc.,*
  449 U.S. 33 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eolas Technologies, Inc., v. Microsoft Corp.,*
  399 F.3d 1325 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fortel Corp. v. Phone-Mate, Inc.,*
  825 F.2d 1577 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fresenius USA, Inc., v. Baxter Int'l, Inc.,*
  \_\_\_\_ F.3d \_\_\_\_, 2013 Westlaw 3305736
  (Fed. Cir. July 2, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17

*In re Broadcom Corp.,*
  2013 Westlaw 1736487, 106 U.S. P.Q.2d 1769
  (Fed. Cir., April 23, 2013.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Zapata Gulf Marine Corp.,*
  941 F.2d 293 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lummus Co. v. Commonwealth Oil Refining Co.,*
  297 F.2d 80 (2d Cir. 1961),
  *cert denied,* 368 U.S. 986 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

*Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.,*
    717 F.2d 1374 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13, 17

*Mohawk Industries, Inc. v. Carpenter*,
    558 US 101 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stored Value Solutions, Inc. v. Card Activation Technologies, Inc.*,
    499 Fed Appx. 5 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

### Statutes

28 U.S.C. § 1651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

35 U.S.C. § 307(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

### Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

Fed. R. Civ. P. 56A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 56B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Fed. R. Civ. P. 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

### MPEP

MPEP § 2260.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

MPEP § 2260.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MPEP § 1455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF RELIEF SOUGHT

Petitioner Vigilant Video and City of Port Arthur, Texas respectfully request this Court to order the District Court as follows:

1)      to grant Petitioners' summary judgment motion as to the application of the final office action of the United States Patent and Trademark Office regarding Patent 5,831,669 as evidenced in its August 21, 2012 Reexamination Certificate to claim 6 and its base claims in the pending matter of *Adrain v. Vigilant Video, Inc., and the City of Port Arthur, Texas,* Eastern District of Texas No. 2:10-CV-173-JRG; and

2)      to overturn the district court's letter brief ruling so that Petitioners may file a motion for summary judgment as to claims 30-32, 35-39, and 41-42 in the pending matter of *Adrain v. Vigilant Video, Inc., and the City of Port Arthur, Texas,* Eastern District of Texas No. 2:10-CV-173-JRG**.**

## STATEMENT OF ISSUES PRESENTED

This petition raises the following issues:

1.    <u>Denial of Motion for Summary Judgment for Claim 6 and 2</u>

A.    Did the district court usurp power reserved to the United States Patent and Trademark Office (USPTO) by denying Petitioners' Motion for Summary Judgment by refusing to apply the amended version of claim 2 of Patent 5,831,669, upon which claim 6 depends, as set forth in the USPTO Reexamination Certificate of August 21, 2012, thus causing Petitioners to litigate an issue already resolved by the USPTO?

B.    Do Petitioners lack other adequate means to prevent litigation of an issue already resolved in Petitioners' favor by the United States Patent and Trademark Office regarding Patent 5,831,669 as evidenced in its August 21, 2012 Reexamination Certificate?

2.    <u>Denial of Motion for Summary Judgment as to Claims 30-32, 35-39, and 41-42</u>

A.    Did the district court abuse its discretion by not following Fed. R. Civ. P. 56 by imposing a letter brief requirement before Petitioners may file a motion for summary judgment as to claims 30-32, 35-39, and 41-42 in the above-referenced lawsuit?

2

B.    Do Petitioners lack other adequate means to attain the right to file a motion for summary judgment as to claims 30-32, 35-39, and 41-42 where they have been denied without explanation the right to file a motion for summary judgment?

## STATEMENT OF THE FACTS

On September 2, 2013, jury selection begins in the case of *John Adrain v. Vigilant Video and City of Port Arthur, Texas* in the Eastern District Court of Texas.  The trial will decide whether Adrain's U.S. Patent 5,831,669 is valid (the '669 patent) and whether Petitioners have infringed the patent (attached hereto as part of the Amended Complaint and incorporated by reference as Exhibit 1, pp. 7-13).   Petitioner Vigilant Video makes and sells the CarDetector Mobile System, a device for scanning and comparing license plates.  Petitioner City of Port Arthur, Texas's police department uses the CarDetector Mobile System for law enforcement purposes.  Petitioners have argued in the case that the '669 patent is invalid due to prior art.  Petitioners initiated reexamination in the United States Patent and Trademark Office (USPTO), and on August 21, 2012, a Reexamination Certificate was issued (Exhibit 1, pp. 14-16).  Mr. Adrain did not appeal the decision of the USPTO to issue the Reexamination Certificate.

Central to Mr. Adrain's case is claim 6 of the '669 patent. Claim 6 reads as follows:

> "A system according to claim 2 wherein the programmer is connected for inputting utilization criteria, the output interface being adapted for reporting selected comparison results according [sic] the  utilization criteria." (Exhibit 1, p. 13.)

In the original version of the '669 patent, claim 2 read in relevant part, "A system according to claim 1...."  (Exhibit 1, p. 12.) However, in the Reexamination Certificate, claim 2 now reads, "A system according to claim [1] *51* ...." (italics and brackets in Reexamination Certificate).  Claim 1 was cancelled.  (Exhibit 1, p. 15.)

Petitioners moved for summary judgment on the grounds that under the Reexamination Certificate, claim 6 depended on claim 2, and claim 2 depended on claim 51.  (Joint Motion for Summary Judgment, attached and incorporated hereto as Exhibit 2.) Claim 51 specifies the use of a "digital camera" (Exhibit 1, p. 16); Petitioners use an analog camera and therefore do not infringe claim 6 of the '669 patent. (Exhibit 2, p. 6-8, 13-18.)

The district court denied  Petitioners' summary judgment motion as to claim 6 based on a refusal to read claim 2 as amended.  The district court stated, "Claim 6 still exists as originally issued, including its dependence from the canceled claim 1 and **original claim 2.**"  (Memorandum Opinion and Order, attached hereto and incorporated by reference as Exhibit 3, p. 4 n. 1 (emphasis added).)  "Under MPEP § 2260.01, the content of the canceled base claim is to be read as a part of the confirmed or allowed dependent claim. The fact that claim 1 was cancelled and claim 2 was amended during reexamination does not alter the application of MPEP § 2260.01, so claim 6 still exists as originally issued.  As such, the doctrine of

5

intervening rights does not apply to claim 6 because it is neither amended nor new." (Exhibit 3, pp. 5-6.)

Currently, a second reexamination proceeding is in progress regarding claim 6 and new claims alleged by Mr. Adrain against the Petitioners. On June 26, 2013, the USPTO issued an office action which, in addition to acknowledging a substantial new question warranting further proceedings as to the new claims, also recapped the effect of the August 12, 2012 Reexamination Certificate. The USPTO stated as follows: "Claim 6 includes limitations of claim 2, from which claim 6 depends. **Claim 6 further includes the limitations of claim 51, from which claim 2 depends.**" (USPTO Office Action, attached hereto and incorporated by reference as Exhibit 4, p. 17 (emphasis added).)

Petitioners have filed a motion for reconsideration pointing out the district court's error in refusing to read claim 2 as amended. The motion has been denied. (Motion for Reconsideration, attached hereto and incorporated as Exhibit 5, and Order, attached hereto and incorporated as Exhibit 6.)

Mr. Adrain's case, in addition to alleging infringement on claim 6, now also includes 10 new claims: claims 30-32, 35-39, and 41-42 of the reexamined '669 patent. Plaintiff was granted permission to amend his contentions of infringement to include these claims by court order on May 13, 2013. (Exhibit 3, p. 4. ) On July

6

8, 2013, plaintiff filed his Amended Complaint attaching the reexamined patent setting forth these claims.   (Exhibit 1.)

On June 28, 2013, Petitioners filed a letter brief requesting permission to file a summary judgment motion as to the 10 new claims.  (Attached hereto and incorporated as Exhibit 7). It is the Honorable Rodney Gilstrap's standard procedure to require letter briefs for summary judgment motions and other unspecified motions.  (Standing Order attached hereto as Exhibit 8 and incorporated by reference herein.)  The Standing Order gives summary judgment motions as an example of those motions requiring letter briefs.  (Exhibit 8, p. 2, 5). Letter briefs must be submitted without attachments.  (Exhibit 8, p. 1.) Petitioners' letter brief request to file a summary judgment motion was denied without explanation on July 8, 2013.  (Order attached hereto as Exhibit 9 and incorporated by reference.)   Petitioners' letter brief summarized arguments in favor of summary judgment, including prior art which invalidates Mr. Adrain's patent as to the 10 new claims.  (Exhibit 7, p. 5.)  The new claims involve infrared capabilities of the patented system which Petitioners are alleged to infringe.  There is clear prior art (the Boyette '5,097,328 patent) involving similar infrared capabilities. (Exhibit 4, p. 5, 18, 19.)

The court-authorized deadline for filing a motion for summary judgment had been April 3, 2013. (Docket Control Order, p. 2, attached hereto as Exhibit 10 and incorporated by reference.) It was not until May 13, 2013, after the summary judgment deadline passed, that the district court granted Mr. Adrain's motion to amend his contentions of infringement to add the 10 new claims (the subject of the proposed summary judgment motion). In light of this situation, the district court set a new summary judgment motion deadline of August 2, 2013. (Order, Exhibit 7, p. 5.)

## STATEMENT OF REASONS A WRIT SHOULD ISSUE

### I.    Jurisdiction

This Court's jurisdiction is based on the All Writs Act, 28 U.S.C. § 1651(a)

grants the federal courts authority to issue writs "necessary or appropriate."

### II.    Standard for Mandamus Relief

A writ of mandamus "is available in extraordinary situations to correct a

clear abuse of discretion or usurpation of judicial power." *In re Broadcom Corp.*,

2013 Westlaw 1736487, *2, 106 U.S. P.Q.2d 1769 (Fed. Cir., April 23, 2013.)  *See*

*Mohawk Industries, Inc. v. Carpenter*, 558 US 101, 111 (2009).   A party seeking a

writ of mandamus must show that its right to issuance of the writ is "clear and

indisputable."  *Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35 (1980).  Typically, a

party must also show "no other adequate means to attain the relief desired." *Allied*

*Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34 (1980).

### III.    Argument

1.    <u>District Court's Failure to Grant Summary Judgement Due to Failure to Apply Amended Claim 2 as Set Forth in USPTO Reexamination Certificate</u>

   *A.    Applicable Circuit Court Law*

This case involves a dispute from a district court in the Fifth Circuit. This

Court applies Federal Circuit precedent to issues which specifically relate to

patents, but applies regional circuit law as to issues unrelated to patents. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004). Petitioners initial issue for mandamus relief involves claim construction, a subject unique to patent law. Accordingly the law of the Federal Circuit Court of Appeals applies.

> B.    *District Court's Failure to Apply USPTO Ruling*.

A writ of mandamus is properly issued where a lower court is requiring the petitioner to litigate an issue already resolved in another court. *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.,* 717 F.2d 1374 (Fed. Cir. 1983); *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80 (2d Cir. 1961), *cert denied,* 368 U.S. 986 (1962). "'The right not to have to relitigate an issue so determined is ... entitled to extraordinary protection.'" *Mississippi*, at1380, quoting *Lummos Co.*, at 87. "The right of an alleged infringer under *Blonder-Tongue* not to relitigate the validity of a patent that has been invalidated in a prior case in which the patentee had a full and fair opportunity to litigate validity is no less entitled to such protection. The present situation involves the kind of 'exceptional circumstances' that warrant the use of the extraordinary remedy of mandamus.'" *Mississippi*, at 1380, (internal quotation and citation omitted). *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 US.

10

313 (1971) (patentee estopped to assert validity of patent declared invalid in prior litigation).

*Mississippi Chemical Corp.* involved a patent infringement case in which the defendant moved for summary judgment on the grounds that the patent had been held invalid in a prior lawsuit against a different defendant.  The district court judge denied summary judgment because 1) the case was close to trial and so most of the cost of litigation had already been incurred; 2) attorney fees based on fraud were still at issue; 3) at least one patent claim would still need to be litigated since it was not litigated in the prior case; and 4) there was *another* prior litigation in which the patent had been held valid.  *Mississippi,* at 137.

Mississippi Chemical Corporation petitioned this Court for a writ of mandamus requiring the granting of its motion for summary judgment.  This Court rejected the factors considered by the district court. "[T]he only inquiry open to the district judge is whether the patentee had a full and fair opportunity to litigate the validity of the patent in the prior case in which it was held invalid ... the unpersuasive factors[1] on which the trial judge based his denial of the estoppel plea ... are irrelevant to this limited inquiry." *Id.,* at 1379.  The same factors could be

---

[1]The district court had incorrectly found that claim 3 had not been previous litigated, but this did not affect the Federal Circuit's analysis as this factor should not have been considered at all by the court.

11

argued by the district court in the case at hand; as in *Mississippi Chemical Corp.,* the only factor that should be considered is that there is a final ruling on the patent after the patentee had a fair opportunity to present his case to the United States Patent and Trademark Office (USPTO).

The collateral estoppel effect of prior rulings of invalidity is not limited to prior *court* rulings. The same effect results from prior USPTO rulings. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, ____ F.3d ____, 2013 Westlaw 3305736 (Fed. Cir. July 2, 2013). In *Fresenius,* this Court held that a final USPTO decision cancelling asserted patent claims must be applied to pending court litigation regarding the same claims; the patentee's cause of action must be dismissed. *Id.*, at *15. Interestingly, while this Court discussed collateral estoppel, this Court noted that "[t]he [PTO decision] is binding not because of collateral estoppel, but because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent. *Id.,* at *13.

As in the *Mississippi Chemical Corp.* case, Petitioners Vigilant Video and City of Port Arthur, Texas, petition this Court to grant their summary judgment motion to apply a prior ruling regarding a patent to pending litigation. However, Petitioners herein seek mandamus to require application of a final order of the

*USPTO* instead of a *court's* prior ruling.  More specifically, Petitioners seek

mandamus to require the correct application of a final order of the USPTO, which

to date the district court has applied incorrectly despite additional USPTO

guidance.  Following *Fresenius,* the final order of the USPTO should be applied

correctly to the pending litigation.  Following *Mississippi Chemical Corp.,*

mandamus is the proper remedy.

As set forth in the Statement of Facts, on August 12, 2012, the USPTO

released a Reexamination Certificate for the '669 patent at issue in this case.  The

Reexamination Certificate **amended** claim 2. In the original version of the '669

patent, claim 2 read in relevant part, "A system according to claim 1...."  However,

in the Reexamination Certificate, claim 2 now reads, "A system according to claim

[1] *51* ...." (italics and brackets in Reexamination Certificate).[2]

Based on the amended form of claim 2, Petitioners moved for summary

judgment as to a claim that depends on claim 2 (claim 6).  However, the district

court has refused to read claim 2 as amended.  The district court has instead ruled

that claim 6 depends on the original version of claim 2, and accordingly the court

has denied Petitioners' summary judgment motion.

---

[2]Reissued patents show deleted material in brackets and new material in italics.  MPEP § 1455.

The district court justified its refusal to read claim 2 as amended based on MPEP § 2260.01, which allows for reexamined dependent claims to continue to depend on "cancelled" claims. This is a clear misreading of MPEP § 2260.01; MPEP § 2260.01 does not apply to "amended" claims.[3] Instead, it reads in pertinent part:

> "If an unamended base patent claim (i.e., a claim appearing in the reexamination as it appears in the patent has been rejected or canceled, any claim which is directly or indirectly dependent thereon should be confirmed or allowed if the dependent claim is otherwise allowable. The dependent claim should *not* be objected to or rejected merely because it depends on a rejected or canceled patent claim. No requirement should be made for rewriting the dependent claim in independent form. As the original patent claim numbers are not changed in a reexamination proceeding, the content of the canceled base claim would remain in the printed patent and would be available to be read as a part of the confirmed or allowed dependent claim."

(Emphasis in original.) The district court apparently became confused due to claim 2's original dependence on claim 1, which was cancelled. Claim 2, in its amended form, does not depend on claim 1.

According to 35 U.S.C. § 307(a), "In a reexamination proceeding ... the Director will issue and publish a certificate ... incorporating in the patent any proposed amended or new claim determined to be patentable." The district court

_____

[3]MPEP § 2260.01 does give guidance for "rejected" amended claims, but doesn't discuss amended claims that have not been rejected.

has erroneously treated claim 2 as a cancelled claim, not an amended claim.

However, under 35 U.S.C. § 307(a), the **amended** claim is incorporated into the

patent and treated as part of the patent.  As the amended claim is incorporated into

the patent, a claim which depends on the newly amended claim incorporates the

limitations set forth in the amendment.  This is apparently so obvious that counsel

could not find case law dealing directly with that issue; instead, case law merely

mentions in passing that the claim incorporates amended claims in their amended

form.  For example, in *Stored Value Solutions, Inc. v. Card Activation*

*Technologies, Inc.*, 499 Fed Appx. 5 (Fed. Cir. 2012), where Card Activation

Technologies amended claims 20 and 29 to add a requirement for authorization

codes, the claims dependent on claims 20 and 29 were treated as requiring

authorization codes also.  499 Fed Appx. 5, 9 (Fed. Cir. 2012).  *See Fortel Corp. v.*

*Phone-Mate, Inc.*, 825 F.2d 1577, 1579 (Fed. Cir. 1987) (where *"*the PTO issued a

Reexamination Certificate ... amending claim 8 (and thus dependent claims 10-

12)*"*).  As in *Stored Value Solutions* and *Fortel Corp.*, claim 6 now incorporates

the **amended** version of claim 2.

In case this Court has any doubt as to the correctness of this analysis, the

USPTO has recently recapped the status of claim 6 for Mr. Adrain.  A new

reexamination proceeding is pending on claim 6 itself (instead of its base claims)

and the 10 new claims asserted by the patentee. In that new proceeding, the USPTO has describes the result of the prior Reexamination Certificate as follows: "Claim 6 includes limitations of claim 2, from which claim 6 depends. Claim 6 further includes the limitations of claim 51, from which claim 2 depends." Claim 51 is from the **amended** claim 2; the USPTO's position on the effect of the Reexamination Certificate is identical to the Petitioners' position. Petitioners have submitted this new USPTO statement to the district court to clear up the district court's confusion, but the district court continues to refuse to apply the August 12, 2012 Reexamination Certificate correctly.[4] There is no presumption that the district court has interpreted the patent claims correctly; instead, if this were a standard appellate  review, the court would review without deference to the district court's interpretation of claim construction or statutory interpretation. *Eolas Technologies, Inc.*, v. *Microsoft Corp.,* 399 F.3d 1325, 1332 (Fed. Cir. 2005).

The district court's refusal to read claim 2 as amended nullifies the USPTO's final action and is an usurpation of the power Congress assigned to the USPTO. This leaves Petitioners without an adequate remedy. Like the petitioner in

---

[4]Asides from the issue preclusion based on the prior USPTO ruling, Petitioners note that the courts generally grant deference to an agency's interpretations.  *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). While *Chevron* applied to agency interpretation of its rules, the reasoning would be applicable to agency application of its rules.

*Mississippi Chemical Corp.,* Petitioners are being asked to go to trial on an issue that has already been decided.   Once that trial occurs, Petitioners right not to have to go to trial on a previously litigated issue will be gone.   Whether one calls this collateral estoppel, or whether one simply attributes this issue preclusion to the USPTO's "expressly delegated reexamination authority," *Fresenius,* at 13, Petitioners rights will be meaningless if trial proceeds on claim 6.

Trial on claim 6 will put counsel in the impossible situation of trying to present evidence relating to its analog camera to defeat claim 51 (the base claim of claim 6 according to the USPTO) and not being allowed to put on any evidence relating to its analog camera because the district court disagrees with the USPTO. Moreover, without mandamus issuing, it is very likely that Petitioners will be found to have infringed a patent claim which the USPTO has already ruled  does not exist.

In denying Petitioners' summary judgment motion as to claim 6, and misreading amended claim 2, the district court has clearly usurped the power of the USPTO.  Additionally, by requiring Petitioners to go to trial on an issue that has been resolved by another governmental entity, the district court has abused its discretion. "'The right not to have to relitigate an issue ... is entitled to extraordinary protection.'" *Mississippi*, at 1380, quoting *Lummus Co.*, at 87.  As in

*Mississippi Chemical Corporation,* a writ of mandamus should issue to the district court requiring petitioners' motion for summary judgment to be granted.

2.     District Court's Refusal to Comply with Fed. R. Civ. P. 56.

A.     *Applicable Circuit Court Law.*

Petitioners acknowledge that Petitioners' Fed. R. Civ. P. 56 issue does not relate specifically to patents and, as such, the law of the circuit from which this case originates is applied. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004.) Accordingly, the law of the Fifth Circuit Court of Appeals applies to this issue.

B.     *District Court's Refusal to Comply with Fed. R. Civ. P. 56.*

Federal Rule of Civil Procedure 56A grants the right to file a summary judgment motion and provides in pertinent part: "A party may move for summary judgment ...." The rule goes on to recite, "The court should state on the record the reasons for granting or denying the motion." Federal Rule of Civil Procedure 56B provides that, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Thus, while a judge may limit the timing for filing a summary judgment motion, nowhere in Fed. R. Civ. P. 56 does it provide for a court to deny entirely the right to file a summary judgment motion.

This is not a case in which petitioners are complaining that their summary judgment motion was denied. Accordingly, case law denying or granting mandamus relief for denial of summary judgment is inapposite. Instead, petitioners assert that they are being deprived of their rights under rule 56 to even file a motion for summary judgment.

On June 28, 2013, Petitioners' submitted a letter brief requesting permission to file a summary judgment motion. Pursuant to the district court's requirements for letter briefs, it was short and contained none of the supporting documentation which movants are allowed to file per Fed. R. Civ. P. 56. In Petitioners' case, this meant that the Petitioners did not get to submit to the district court the prior art that shows that Mr. Adrain's 10 new claims are invalid. These claims involve infrared capabilities of the patented system which Petitioners are alleged to infringe. There is clear prior art (the Boyette '5,097,328 patent) involving similar infrared capabilities which would invalidate these claims of the patent. However, Petitioners are prevented from obtaining summary judgment on this issue due to the district court's refusal to let Petitioners file a summary judgment motion.

Petitioners' request was denied without explanation. This violates Fed. R. Civ. P. 56 which states that a party may move for summary judgment and have evidence considered in support of summary judgment. It also essentially violates

Fed. R. Civ. P. 56B by effectively denying Petitioners's summary judgment motion without stating on the record the reasons for denying the motion.

A district court's failure to comply with the federal rules is a clear abuse of discretion justifying mandamus relief.  For example, in *In re Zapata Gulf Marine Corp.*, the Fifth Circuit granted a writ of mandamus to the district court as the district court had not complied with Fed. R. Civ. P. 62 regarding stays upon appeal. 941 F.2d 293 (5th Cir. 1991).  In the matter of Petitioners Vigilant Video and City of Port Arthur, the district court has likewise failed to comply with the federal rules.  This is a clear abuse of discretion.

Petitioners have no remedy for not being allowed to file a motion for summary judgment.  Summary judgment is designed to promptly dispose of actions in which there is no genuine as issue as to any material facts.  *See* Fed. R. Civ. P. 56 advisory committee notes.  Petitioners will have to go through the delay, expense, and time of a trial on a matter that could be readily resolved on summary judgment.  To avoid this, the rules allow Petitioners to at least have the opportunity to argue that they are entitled to judgment without proceeding to trial.  Proceeding to trial will not provide an adequate remedy for this loss of time and expense and this denial of a fundamental right under the federal rules.   Petitioners are without an adequate remedy; accordingly, a writ of mandamus should issue.

## IV.    Conclusion

The district court has exceeded its lawful authority by misapplying the clear ruling of the USPTO and by denying Petitioners the right to file a motion for summary judgment per federal rules. Petitioners have no adequate remedy. Mandamus relief is appropriate under these extraordinary circumstances.

DATED August 2, 2013.                    Respectfully submitted,

*/s/ Roy B. Thompson*
Roy B. Thompson
Attorney for Petitioners

## EXHIBITS IN SUPPORT OF PETITION

1.  First Amended Complaint for Patent Infringement filed July 8, 2013 (D.E. 234) with U.S. Patent 5,831,699 attached.

2.  Defendants' Joint Motion for Summary Judgment filed November 30, 2011 (D.E. 126)

3.  Memorandum Opinion and Order filed May 13, 2013 (D.E. 181)

4.  Exhibit A: June 26, 2013 USPTO Office Order Granting Reexamination of U.S. Patent No. 5,831,699 (D.E. 248-1)

5.  Defendants' Motion for Reconsideration of the Court's May 14, 2013 Memorandum and Order (Dkt. No. 181) filed May 21, 2913 (D.E. 202)

6.  Order on Motions and Amendment to the Docket filed July 8, 2013 (D.E. 233)

7.  Defendants' Notice of Compliance with the Court's Order Regarding Summary Judgment Motions filed June 28, 2013 (D.E. 226) with Exhibit A, June 28, 2013 Letter attached

8.  U.S. District Court for the Eastern District of Texas Standing Order Regarding Submission of Letter Briefs for Cases Assigned to Judge Rodney Gilstrap and Judge Roy S. Payne

9.  Order filed July 8, 2013 (D.E. 235)

10. Docket Control Order filed March 3, 2011 (D.E. 49)

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOHN B. ADRAIN, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 2:10-cv-173 |
| | § | |
| vs. | § | **JURY TRIAL DEMANDED** |
| | § | |
| VIGILANT VIDEO, INC. and THE CITY OF | § | |
| PORT ARTHUR, TEXAS, | § | |
| | § | |
| *Defendants*. | § | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff John B. Adrain ("Adrain") brings this action against defendants Vigilant Video, Inc. ("Vigilant"), and The City of Port Arthur, Texas ("Port Arthur") and alleges:

### THE PARTIES

**1.**     Adrain is an individual residing in Spokane County, Washington.  Adrain is the inventor of and owns the entire right, title, and interest in the patent at issue in this case.

**2.**     On information and belief, Vigilant is a registered corporation organized and existing under the laws of Delaware, having a principal place of business at 2021 Las Positas Court, Suite 155, Livermore, California 94551-7305.  Vigilant has designated its registered agent for purposes of service of process as Steve Cintron, 3014 San Juan Boulevard, Belmont, California 94002-1348.  On information and belief, Vigilant is doing business in this District.

**3.**     On information and belief, Port Arthur is a municipal corporation with its principal place of business in Jefferson County, Texas.  Per Tex. Civ. Prac. & Rem. Code § 17.024(b), Port Arthur's agent for purposes of service of process is Mayor Deloris Prince, located at 444 4th Street, Port Arthur, Texas 77640.  Port Arthur is doing business in Texas.

Exhibit 1
Page 1

### JURISDICTION AND VENUE

**4.**     This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code.

**5.**     Subject-matter jurisdiction over Adrain's claims is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a).

**6.**     On information and belief, defendants have operated, conducted, engaged in, and/or carried on business in the state of Texas.

**7.**     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

### PATENT INFRINGEMENT

**8.**     On November 3, 1998, U.S. Patent No. 5,831,669 ("the '669 patent"), entitled "Facility Monitoring System with Image Memory and Correlation" was duly and legally issued to the inventor, John B. Adrain.  A Reexamination Certificate for the '669 patent issued on August 21, 2012.  A true and correct copy of the '669 patent with the Reexamination Certificate is attached hereto as Exhibit A.   Adrain owns all right, title and interest in the '669 patent, including the right to sue for and recover all past, present and future damages for infringement of the '669 patent.

**9.**     The '669 patent is presumed valid.

**10.**     Upon information and belief, defendants, either alone or in conjunction with others, have in the past and continue to infringe, contribute to infringement, and/or induce infringement of the '669 patent by making, using, selling, offering to sell, and/or importing, and/or causing others to make, use, sell, or offer to sell, or import, in this judicial district and/or elsewhere in the United States, image recognition systems and/or devices, including license plate recognition systems and/or devices, that are covered by one or more of the claims of the '669 patent, such as at least the Vigilant CarDetector system.

**11.**     Defendants are each liable for infringement of the '669 patent pursuant to 35 U.S.C. § 271.

**12.**     Defendant Vigilant's acts of infringement have caused damage to Adrain, and Adrain is entitled to recover from defendant Vigilant the damages sustained by Adrain as a result of defendant Vigilant's wrongful acts in an amount subject to proof at trial.

**13.**     As a consequence of the infringement complained of herein, Adrain has been irreparably damaged to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless defendants are enjoined by this Court from committing further acts of infringement.

## PRAYER FOR RELIEF

**WHEREFORE**, Adrain prays for entry of judgment that:

**A.**     Defendants have infringed, contributed to infringement of, and/or induced infringement of the '669 patent;

**B.**     Defendant Vigilant account for and pay to Adrain all damages caused by its infringement of the '669 patent;

**C.**     Adrain be granted permanent injunctive relief pursuant to 35 U.S.C. § 283 enjoining defendants Vigilant and Port Arthur and their officers, agents, servants, employees and those persons in active concert or participation with them from further acts of patent infringement;

**D.**     Adrain be granted pre-judgment and post-judgment interest on the damages caused to him by reason of defendant Vigilant's patent infringement;

**E.**     The Court declare this an exceptional case and that Adrain be granted his reasonable attorneys' fees in accordance with 35 U.S.C. § 285;

**F.**     Costs be awarded to Adrain; and,

**G.**    Adrain be granted such other and further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Adrain demands trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated:  July 8, 2013                    By:    /s/John T. Polasek_____
                                        John T. Polasek
                                        Texas Bar. No. 16088590
                                        tpolasek@pqelaw.com
                                        C. Dale Quisenberry
                                        Texas Bar No. 24005040
                                        dquisenberry@pqelaw.com
                                        Jeffrey S. David
                                        Texas Bar No. 24053171
                                        jdavid@pqelaw.com
                                        POLASEK, QUISENBERRY & ERRINGTON, L.L.P.
                                        6750 West Loop South, Suite 920
                                        Bellaire, Texas 77401
                                        Telephone: (832) 778-6000
                                        Facsimile: (832) 778-6010

                                        Otis W. Carroll
                                        State Bar No. 03895700
                                        nancy@icklaw.com
                                        Deborah Race
                                        State Bar No. 16448700
                                        fedserve@icklaw.com
                                        IRELAND, CARROLL & KELLEY, P.C
                                        6101 S. Broadway, Suite 500
                                        P.O. Box 7879
                                        Tyler, Texas 75711
                                        Telephone: (903) 561-1600
                                        Facsimile: (903) 581-1071

                                        S. Calvin Capshaw
                                        State Bar No. 03783900
                                        ccapshaw@capshawlaw.com
                                        Elizabeth L. DeRieux
                                        State Bar No. 05770585
                                        ederieux@capshawlaw.com
                                        Capshaw DeRieux, LLP

Exhibit 1
Page 4

114 East Commerce Avenue
Gladewater, Texas  75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

Russell R. Smith
State Bar No. 18682310
rsmith@fairchildlawfirm.com
Fairchild, Price, Haley, & Smith, L.L.P.
1801 North Street
Nacogdoches, Texas 75963-1668
Telephone:  (936) 569-2327
Facsimile:  (936) 569-7932


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 8th day of July, 2013, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.


/s/ John T. Polasek

US005831669A

# United States Patent [19]

## Adrain

[11] **Patent Number:** 5,831,669

[45] **Date of Patent:** *Nov. 3, 1998

[54] **FACILITY MONITORING SYSTEM WITH IMAGE MEMORY AND CORRELATION**

[76] Inventor: **John B. Adrain**, Box 299, Salt Lake City, Utah 84110

[ * ] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

[21] Appl. No.: **677,100**

[22] Filed: **Jul. 9, 1996**

[51] **Int. Cl.6** ...................................................... H04N 7/18
[52] **U.S. Cl.** ............................................. 348/143; 348/159
[58] **Field of Search** ..................................... 348/143, 152, 348/155, 156, 159, 161; 382/156, 159; H04N 7/18

[56] **References Cited**

U.S. PATENT DOCUMENTS

4,185,298   1/1980   Billet et al. .

| | | |
|---|---|---|
| 4,547,897 | 10/1985 | Peterson . |
| 4,704,694 | 11/1987 | Czerniejewski . |
| 4,728,195 | 3/1988 | Silver . |
| 4,972,359 | 11/1990 | Silver et al. . |
| 5,293,428 | 3/1994 | Kondou et al. . |
| 5,367,439 | 11/1994 | Mayer et al. . |
| 5,371,690 | 12/1994 | Engel et al. . |
| 5,426,509 | 6/1995 | Peplinski . |

*Primary Examiner*—Howard Britton
*Attorney, Agent, or Firm*—Pearne, Gordon, McCoy & Granger LLP

[57] **ABSTRACT**

A video image of a space is monitored and compared to a reference image. Correlation of the images indicates presence of unwanted persons or objects or the occurrence of unwanted events. When programmed comparison criteria are met, an alarm is activated, the space is displayed on a monitor, and the image is stored in memory. Reference images are stored during dedicated or ongoing learn modes.

**20 Claims, 2 Drawing Sheets**



Exhibit 1
Page 7



FIG. 1

Exhibit 1
Page 8



FIG.2

Exhibit 1
Page 9

5,831,669

## 1

# FACILITY MONITORING SYSTEM WITH IMAGE MEMORY AND CORRELATION

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates generally to the field of monitoring and security and specifically to a system that records images and identifies correlation or lack of correlation with the images.

### 2. Description of the Related Art

Video cameras are used for monitoring activity in myriad locations and applications. Commonly, a person views a display showing a scene viewed by the cameras. A single display might receive input from several cameras or each camera might have a dedicated display. Frequently, the person is responsible for monitoring several displays, in addition to other responsibilities. The person cannot give undivided attention to each monitor. Even if the person is responsible only for monitoring a single display, fatigue, boredom, hypnosis, or other factors can cause the person to miss events shown on the display.

Events recorded by the cameras are frequently stored on tape or by some other memory device for subsequent review. This permits replay and careful review, but monitoring is not automatic and not coincident with the events being recorded.

Machine vision devices employing digital image processing are used in manufacturing to test proper positioning, assembly and construction of parts and components. Numerous images of parts or assemblies are successively compared to reference images. Correlation and other characteristics of the comparisons are determined. If a part or assembly does not meet selected criteria, it is determined to be defective and is removed from the manufacturing operation. Examples of such devices and associated systems are shown in U.S. Pat. Nos. 4,185,298; 4,704,694; 4,728,195; 4,972,359; 5,293,428; 5,367,439; 5,371,690; 5,426,509.

## SUMMARY OF THE INVENTION

The present invention provides a monitoring system having a camera adapted for receiving images of a space to be monitored. An interpreter receives image data from the camera, and a reference memory stores reference image data. A comparator is connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria. An output interface reports results of the image data comparisons performed by the comparator.

A programmer is provided for inputting the comparison criteria to the comparator. The programmer is connected for inputting analysis criteria to the interpreter and the interpreter is adapted for analyzing the image data according to the analysis criteria. The programmer is connected for inputting learn criteria to the interpreter and the interpreter is connected for storing image data from the camera in the reference memory according to the learn and analysis criteria. The programmer is connected for inputting learn criteria to the interpreter and the interpreter is connected for storing image data from the camera in the reference memory according to the learn criteria. The programmer is connected for inputting utilization criteria, the output interface being adapted for reporting selected comparison results according the utilization criteria.

A record memory is connected for storing image data from the output interface. The record memory is adapted for storing information associated with the image data stored. A

## 2

video monitor is provided for displaying images from the output interface. A second camera is connected to provide image data to the interpreter, wherein the interpreter derives a three-dimensional image of the space and the reference memory, comparator, and output interface are adapted for processing three-dimensional image data.

The interpreter is adapted for storing in the reference memory image data from the camera. The interpreter is adapted for periodically storing in the reference memory image data from the camera according to learn criteria. The reference memory is adapted for storing image data for plural images and the comparator is adapted for comparing image data from the interpreter to image data for the plural images from the reference memory according to selected comparison criteria. The camera is mounted to a movable support, such as a vehicle, and the space to be monitored changes according to movement of the support. Alternatively, the camera is mounted to a stationary support. The interpreter is adapted for dividing image data into zones and the comparator is adapted for comparing image data corresponding to the different zones with image data from the reference memory according to different comparison criteria for each zone. The interpreter is adapted for disregarding image data corresponding with a certain zone selected according to selected analysis criteria. The comparator is adapted for sequentially comparing the image data from the different zones and discontinuing comparison of an image upon failure to meet the comparison criteria for the zone being compared. The interpreter is adapted for dividing image data into zones and different criteria are applied to different zones of the image data.

The invention also provides a method of monitoring a space. Method steps include receiving a first set of image data from the space; identifying and selecting a portion of the information to be stored according to analysis and learn criteria; storing the selected information; receiving a second set of image data from the space; identifying and selecting a portion of the second set of image data to be analyzed according to the analysis criteria; comparing the selected portions of the sets of image data to each other so as to determine a correlation of the images; and indicating whether the correlation of the images meets selected comparison criteria.

Additional steps include reporting results of the comparison step according to utilization criteria; establishing the analysis and learn criteria; establishing the comparison criteria; and establishing the utilization criteria. The step of indicating includes recording image data according to utilization criteria. Plural sets of image data are stored and the step of comparing the image data comprises comparison of the plural sets of image data to one of the sets of image data. The image data are sequentially received from different spaces. The step of storing data includes establishing baseline image data and subsequently storing changes from the baseline data. The portions of data selected represent a zone of the space. The steps are repeated for selected data representing a different zone of the space and at least one set of the analysis, learn, and comparison criteria is different from the previous criteria.

The system according to the invention has application in numerous situations where video or human monitoring is presently utilized. In addition, this system has application where video and other forms of monitoring have been ineffective. For example, casinos can use this system for identifying irregularities in the dealing and playing of cards and other games. Commercial facilities can use the system for reliably identifying breaches of security with minimal

Exhibit 1
Page 10

5,831,669

**3**

false alarms. Law enforcement officials can use the system to monitor license plates with mobile or stationary equipment for identifying stolen vehicles.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows a block diagram of a monitoring system according to the invention; and

FIG. **2** shows a schematic diagram of another embodiment of the invention.

### DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring to FIG. **1**, a monitoring system **10** includes cameras **12**, **13** for monitoring a space **14**. The space **14** can be a room, an entry, a passage, or any other location. The cameras **12**, **13** are mounted on stationary supports, such as walls of the space **14**. In one embodiment, the camera **12** is a digital video camera translating visible images into digital electric signals. As discussed below, other cameras are also suitable, such as analog or infrared. A single camera can be used for two dimensional images; Two cameras are used for three-dimensional images, wherein an interpreter derives the three-dimensional image from image data received from the two cameras. Additional cameras can be used for monitoring different spaces or different characteristics of the same space. The cameras are connected to input image data to an interpreter **16**. The interpreter **16** selects image data from the cameras **12**, **13** according to analysis criteria input from a programmer **18**. Programming can be performed directly by user inputs provided at the programmer or remotely, for example by a modem using a computer with a program interface. A reference memory **20** receives data from the interpreter **16** according to storage criteria input to the interpreter by the programmer **18**. A comparator **22** receives data from the interpreter **16** and reference memory **20** and compares these data according to comparison criteria input by the programmer **18**. The comparator **22** determines a correlation between pixels from the reference memory **20** and pixels from the interpreter **16**. If the comparator **22** determines that the correlation falls within or outside of a selected range requiring action, results of the comparison are input to an output interface **24**, such as an alarm panel, a memory interface, or a video monitor interface. The output interface **24** reports results of the comparison by selecting comparison data to be stored or otherwise utilized by a record memory **26** or monitor **28**, for example, connected to receive data from the output interface according to criteria input by the programmer **18**. Preferably, the interpreter **16**, programmer **18**, reference memory **20**, comparator **22**, and output interface **24** are integrated in a microcomputer and associated software.

Using the programmer **18**, a user inputs learn criteria, including analysis and storage criteria for reference images to be stored in the reference memory. For example, the user can instruct the interpreter **16** to identify and store in the reference memory **20** a pixel representation of all stationary objects in the space **14** at a selected time. The interpreter **16** identifies the object images meeting the programmed criteria, and stores the images in the reference memory **20**. The reference memory can be divided into sections for storing different types of data. The reference memory can include an archive section in which baseline image data are stored. After storing the baseline data, subsequent images can be stored by storing only data that have changed from the baseline. According to user programming, the storing of images can be repeated at

**4**

selected times or continuously according to the learn criteria. For example, the stationary objects can be identified at the same time every day, or when a person whose image data is in the reference memory appears in the space with a new person, the new person's image data is stored in the reference memory. Also, the learn criteria can be automatically revised to create new learn criteria according to image data from the interpreter and the current learn criteria.

The user also programs analysis criteria for monitoring the space. For example, the interpreter **16** can monitor image data from the camera **14** during certain time periods when the images of the stationary objects are not supposed to be moved.

The user also inputs comparison criteria. Comparison criteria include selecting the images to be compared and a range of correlation in which the monitored image is sufficiently like the reference image for a particular purpose. For example, stationary object images and monitored images are compared to determine whether any object previously identified as stationary is not in its previous location. Image data from the interpreter and the reference memory are compared by the comparator **22** according to the comparison criteria to determine correlation of the images. For example, if the location of an object in the image data from the interpreter is not the same as the location of the same object in the reference memory, then the comparator sends an alarm signal to the output interface **24** indicating an alarm condition. Sensitivity of the correlation can be adjusted. For example, the alarm condition can occur on any movement of an object or only on complete absence of an object from the space. The comparison criteria can include events or movements as well as stationary patterns. For example, a person's hand would be an acceptable stationary pattern, but a pixel pattern representing sudden movement of the hand, such as striking something, would represent an impermissible event causing an alarm. The alarm signal can include an image of the space, an identification of the space or the object, the time of the signal, or any other signal indicating that the comparison criteria have been met or not met, as is appropriate. The output interface **24** selects and/or translates the appropriate signals and forwards them to output devices. For example, an audible alarm sounds and the monitor **28** shows the video image of the space **14** when the object is moved, and the image, date and time of the movement of the object is recorded in the record memory **26**. Multiple monitoring system components can be connected to a single output interface and monitor to monitor different spaces or different parts of a space. When an alarm condition arises in one space, its output is sent to the monitor and can be augmented by other information such as sound from the space being monitored and information about the space or condition.

Learning and analysis can be performed separately or coincidentally. Learning can be accomplished directly by entering a learn only mode and recording images in the reference memory. Learning can also be accomplished indirectly, for example by association of new images with previously learned images or by receiving new images during permitted learning periods that coincide with monitoring periods.

Referring to FIG. **2**, the camera **12** can be mounted on a mobile support, such as a vehicle **30**. The space **14** and objects **32** being monitored change according to movement of the vehicle **30**. For example, the camera can be mounted on a police car and programmed to monitor license plate numbers. The reference memory stores license numbers for stolen cars. Analysis is limited to consistently sized characters within a specified boundary, that is the rectangular shape

Exhibit 1
Page 11

5,831,669

**5**

of the license plate. When the object **32** meets the analysis criteria of a license plate, the number is compared to the numbers in the reference memory. When the comparison finds a match, an appropriate alarm indicates discovery of a stolen car to officers in the police car. Information about the car and possible occupants can be displayed as well.

The invention, as shown for example in FIGS. **1** and **2**, can be used in numerous methods of operation. The license plate example utilizes a high degree of correlation between the reference image and the monitored image. Other aspects of the invention, discussed previously and below, utilize lack of correlation between the reference and monitored images to trigger an alarm condition. Combinations of these aspects can also be used for different objects or spaces monitored by the same system.

A limited access entry or passage, an office or workspace, or a home can be monitored. The learn criteria identify persons permitted to be in the monitored space, image data of their faces being stored in the reference memory. The space monitored is generally consistent so that the analysis criteria ignore the environment and limit the analysis to the faces of persons in the space. The comparison criteria are set to identify unauthorized persons in the space according to comparison of persons in the space with persons in the reference memory. The comparison allows for variations in appearance, such as changes in hair style or facial expressions, by allowing pixel comparisons to vary within a range and by focusing on less changeable parts, such as the nose.

Sensitivity of the correlation can be varied within a space being monitored. Image data for a space can be divided into zones in which different learn, analysis, comparison, and/or utilization criteria apply. For example, monitoring roads to locate license plates, as described with reference to FIG. **2**, can also include monitoring the object vehicles **34**. License plate characters are uniform, so close correlation of the reference and object in zone A is desired. The color and general outline of the object vehicle can also be analyzed, however, lesser correlation is desired in zone B because different lighting can affect color and the amount of data required for the comparison can be limited. Also, assuming the license plate characters match, close correlation of the vehicle comparison may not be necessary. An alternative analysis and comparison would identify a license plate match in zone A and then compare the vehicle outline in zone B. If the vehicle outline does not sufficiently correlate with the image data corresponding to the license plate number, the output interface would report that the license plate has been switched from the vehicle on which the plate is supposed to be mounted.

Images from different zones can be compared sequentially. The results of a comparison in one zone can affect whether and how a subsequent comparison is performed. For example, the results of a comparison in one zone can determine which zone and/or what comparison criteria are used for a subsequent comparison.

Another method monitors a consistent space, with many different objects and persons. The analysis is limited to specifically defined movements or events possibly within a specified zone. For example, cheating at a casino black jack table is monitored by identifying cards that move outside a selected zone on the table. Also, a person's hand or arm that reaches from the players' side of the table into a forbidden zone will trigger an alarm. However, the dealer's arms and the movement of cards in the playing zone are ignored. Events occurring away from the table are also ignored

**6**

although they might be recorded for the purpose of identifying the offending player.

In some applications, all but very specific events can be ignored. For example, bank employees can be trained to make a certain movement during a robbery. To the uninitiated, the signal appears innocuous, but the monitoring system is programmed to recognize the movement and trigger an alarm. Like a password, the movement can be changed and accordingly reprogrammed in the system.

Data other than visual images can also be analyzed. For example, thermal images can be used to sense overheating of equipment or fires in facilities. Micropower impulse radar (MIR) can be used to monitor spaces through smoke, walls, or other opaque materials. Different types of cameras or cameras collecting different types of image data can be combined. For example, a thermal camera can monitor a space to sense a fire. A radar camera can monitor the same space to sense whether floors or walls have collapsed due to the fire.

Monitoring can be accomplished in real time or using images collected previously. For example, an amusement park can use cameras located at different points in the park. Analysis of traffic flow can be analyzed in real time based on criteria selected prior to monitoring. Results can be used immediately to correct for unwanted conditions. Alternatively, the cameras can collect image data for storage. At a later time, comparison can be made based on criteria selected at the later time and the comparison results used to establish a statistical database for future planning.

The present disclosure describes several embodiments of the invention, however, the invention is not limited to these embodiments. Other variations are contemplated to be within the spirit and scope of the invention and appended claims.

What is claimed is:

**1**. A monitoring system comprising:

a movably mounted camera adapted for receiving images of a space to be monitored;

an interpreter for receiving image data from the camera;

a reference memory for storing reference image data;

a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by the comparator.

**2**. A system according to claim **1** further comprising a programmer for inputting the comparison criteria to the comparator.

**3**. A system according to claim **2** wherein the programmer is connected for inputting analysis criteria to the interpreter and the interpreter is adapted for analyzing the image data according to the analysis criteria.

**4**. A system according to claim **3** wherein the programmer is connected for inputting learn criteria to the interpreter and the interpreter is connected for storing image data from the camera in the reference memory according to the learn and analysis criteria.

**5**. A system according to claim **2** wherein the programmer is connected for inputting learn criteria to the interpreter and the interpreter is connected for storing image data from the camera in the reference memory according to the learn criteria.

Exhibit 1
Page 12

5,831,669

7

**6**. A system according to claim **2** wherein the programmer is connected for inputting utilization criteria, the output interface being adapted for reporting selected comparison results according the utilization criteria.

**7**. A system according to claim **1** wherein the camera is mounted on a vehicle.

**8**. A system according to claim **1** wherein the record memory is adapted for storing information associated with the image data stored.

**9**. A system according to claim **1** wherein the interpreter selects images according to analysis criteria so that only the selected images are input to the comparator for comparison to reference images.

**10**. A system according to claim **9** wherein the selected images represent only portions of a larger image.

**11**. A monitoring system comprising:

a movably mounted camera adapted for receiving images of a space to be monitored;

an interpreter for receiving image data from the camera;

a reference memory for storing reference image data for plural images and a comparator adapted for comparing image data from the interpreter to image data for the plural images from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by selected image data.

**12**. A method of monitoring a space comprising the steps of:

receiving a first set of image data from the space representing plural images;

identifying and selecting a portion of the information to be stored according to analysis and learn criteria;

8

storing the selected information;

receiving a second set of image data from the space;

identifying and selecting a portion of the second set of image data to be analyzed according to the analysis criteria, wherein the selected portion represents a recognizable portion of image data among unrecognized portions of image data in the space being monitored;

comparing the selected portions of the sets of image data to each other so as to compare the second set of image data to the plural images of the first set and determine a correlation of the images; and

indicating whether the correlation of the images meets selected comparison criteria.

**13**. A method according to claim **12** further comprising the step of reporting results of the comparison step according to utilization criteria and augmenting the reporting with identifying information.

**14**. A method according to claim **12** further comprising the step of establishing the analysis and learn criteria.

**15**. A method according to claim **12** further comprising the step of establishing the comparison criteria.

**16**. A method according to claim **12** wherein the image data are sequentially received from different spaces.

**17**. A method according to claim **12** wherein the step of storing data includes establishing baseline image data and subsequently storing changes from the baseline data.

**18**. A method according to claim **12** wherein the portions of data selected represent a zone of the space.

**19**. A method according to claim **18** wherein the steps are repeated for selected data representing a different zone of the space and at least one set of the analysis, learn, and comparison criteria is different from the previous criteria.

**20**. A method according to claim **12** wherein the comparison of image data is repeated to distinguish between movements based on a series of sequential images.

\*   \*   \*   \*   \*

Exhibit 1
Page 13

US005831669C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (9209th)

# United States Patent
Adrain

(10) **Number:** US 5,831,669 C1
(45) **Certificate Issued:** Aug. 21, 2012

(54) **FACILITY MONITORING SYSTEM WITH IMAGE MEMORY AND CORRELATION**

(75) Inventor: **John B. Adrain**, Salt Lake City, UT (US)

(73) Assignee: **Ericsson Inc.**, Menlo Park, CA (US)

**Reexamination Request:**
No. 90/011,233, Sep. 14, 2010

**Reexamination Certificate for:**
Patent No.: **5,831,669**
Issued: **Nov. 3, 1998**
Appl. No.: **08/677,100**
Filed: **Jul. 9, 1996**

(51) **Int. Cl.**
*H04N 7/18* (2006.01)

(52) **U.S. Cl.** ........................ **348/143**; 348/152; 348/155; 348/156; 348/159; 348/161; 382/156; 382/159

(58) **Field of Classification Search** ................... 348/143
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/011,233, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner*—Henry N Tran

(57) **ABSTRACT**

A video image of a space is monitored and compared to a reference image. Correlation of the images indicates presence of unwanted persons or objects or the occurrence of unwanted events. When programmed comparison criteria are met, an alarm is activated, the space is displayed on a monitor, and the image is stored in memory. Reference images are stored during dedicated or ongoing learn modes.



Exhibit 1
Page 14

US 5,831,669 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims **1** and **11** are cancelled.

Claims **2** and **7-9** are determined to be patentable as
amended.

Claims **3** and **10**, dependent on an amended claim, are
determined to be patentable.

New claims **21-52** are added and determined to be patent-
able.

Claims **4-6** and **12-20** were not reexamined.

Other new claims **53-56** were canceled by the Examiner's
Amendment.

**2**. A system according to claim [**1**] *51* further comprising
programmer for inputting the comparison criteria to the
comparator.

**7**. A system according to claim [**1**] *51* wherein the camera
is mounted on a vehicle.

**8**. A system according to claim [**1**] *51* wherein the record
memory is adapted for storing information associated with
the image data stored.

**9**. A system according to claim [**1**] *51* wherein the inter-
preter selects images according to analysis criteria so that
only the selected images are input to the comparator for
comparison to reference images.

*21. The monitoring system of claim 51, wherein said digi-
tal camera is adapted to receive images using RADAR, ther-
mal, or infrared detection of for receiving images through an
opaque material.*

*22. The monitoring system of claim 51, further comprising
an additional camera for receiving images for outputting to
said interpreter.*

*23. The monitoring system of claim 22, wherein said addi-
tional camera is used with said digital camera such that the
received images are three-dimensional images.*

*24. The monitoring system of claim 51, wherein said digi-
tal camera is mounted on a vehicle and wherein said images
include images of a license plate on an additional vehicle
and wherein said images also include images of the addi-
tional vehicle, and further wherein said recognizable images
include images for identifying alphanumeric characters on
said license plate and also include images for identifying a
characteristic of said additional vehicle.*

*25. The monitoring system of claim 52, wherein said digi-
tal camera is adapted to receive images using RADAR, ther-
mal, or infrared detection or for receiving images through an
opaque material.*

*26. The monitoring system of claim 52, further comprising
an additional camera for receiving images for outputting to
said interpreter.*

*27. The monitoring system of claim 26, wherein said addi-
tional camera is used with said digital camera such that the
received images are three-dimensional images.*

*28. The monitoring system of claim 52, wherein said digi-
tal camera is mounted on a vehicle.*

*29. The monitoring system of claim 51, wherein said digi-
tal camera is mounted on a vehicle and wherein said images
include images of a license plate on an additional vehicle
and wherein said images also include images of the addi-
tional vehicle, and further wherein said recognizable images
include images for identifying alphanumeric characters on
said license plate and also include images for identifying a
characteristic of said additional vehicle.*

*30. A monitoring system comprising:*
*a movably mounted camera adapted for receiving images
of a space to be monitored by detecting RADAR,
thermal, or infrared images or for detecting images
through an opaque material;*
*an interpreter for receiving image data from the camera;*
*a reference memory for storing reference image data;*
*a comparator connected for comparing image data from
the interpreter to image data from the reference
memory according to selected comparison criteria,
wherein the interpreter and comparator cooperate to
select recognizable portions of image data among
unrecognized portions of image data in the space being
monitored, the selected image portions being compared
to the image data in the reference memory; and an
output interface for reporting results of the image data
comparisons performed by the comparator.*

*31. A system according to claim 30 further comprising a
programmer for inputting the comparision criteria to the
comparator.*

*32. A system according to claim 31 wherein the program-
mer is connected for inputting analysis criteria to the inter-
preter and the interpreter is adapted for analyzing the image
data according to the analysis criteria.*

*33. A system according to claim 32 wherein the program-
mer is connected for inputting learn criteria to the inter-
preter and the interpreter is connected for storing image
data from the camera in the reference memory according to
the learn and analysis criteria.*

*34. A system according to claim 31 wherein the program-
mer is connected for inputting learn criteria to the inter-
preter and the interpreter is connected for storing image
data from the camera in the reference memory according to
the learn criteria.*

*35. A system according to claim 31 wherein the program-
mer is connected for inputting utilization criteria, the output
interface being adapted for reporting selected comparison
results according to the utilization criteria.*

*36. A system according to claim 30 wherein the camera is
mounted on a vehicle.*

*37. A system according to claim 30 wherein the reference
memory is adapted for storing information associated with
the image data stored.*

Exhibit 1
Page 15

US 5,831,669 C1

| 3 | 4 |

**3**

38. A system according to claim 30 wherein the interpreter selects images according to analysis criteria so that only the selected images are input to the comparator for comparison to reference images.

39. A system according to claim 38 wherein the selected images represent only portions of a larger image.

40. A system according to claim 30, wherein said camera is a digital camera, and wherein said image data is digital image data.

41. The monitoring system of claim 30, further comprising an additional camera for receiving images for outputting to said interpreter.

42. A system according to claim 30 wherein infrared images are detected by said camera.

43. A system according to claim 30 wherein RADAR images are detected by said camera.

44. A system according to claim 30 wherein images through an opaque material are detected by said camera.

45. A monitoring system comprising:

a movably mounted camera adapted for receiving images of a space to be monitored by detecting an image through an opaque material;

an interpreter for receiving image data from the camera;

a reference memory for storing reference image data for plural images and a comparator adapted for comparing image data from the interpreter to image data for the plural images from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by the comparator.

46. A system according to claim 45 wherein the camera detects images using infrared light.

47. A system according to claim 45 wherein the camera detects images using a RADAR signal.

48. A system according to claim 45 wherein the camera detects thermal images.

49. A monitoring system comprising:

a first movably mounted camera adapted for receiving images of a space to be monitored;

a second camera adapted for receiving additional images of the space;

an interpreter for receiving image data from the first and second cameras, wherein said image data represents three dimensional images;

a reference memory for storing reference image data;

a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by the comparator, wherein

**4**

images that have changed in the space are detected and stored in a memory.

50. A monitoring system comprising:

a first movably mounted camera adapted for receiving images of a space to be monitored for monitoring certain characteristics of the space;

a second camera adapted for receiving additional images of the space for monitoring different characteristics of the space;

an interpreter for receiving image data from the first and second cameras, wherein said image data represents three dimensional images;

a reference memory for storing reference image data;

a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by the comparator.

51. A monitoring system comprising:

a movably mounted digital camera adapted for receiving images of a space to be monitored for directly outputting digital image data;

an interpreter for receiving said digital image data from the digital camera;

a reference memory for storing reference image data;

a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by the comparator.

52. A monitoring system comprising:

a movably mounted digital camera adapted for receiving images of a space to be monitored for directly outputting digital image data;

an interpreter for receiving said digital image data from the digital camera;

a reference memory for storing reference image data for plural images and a comparator adapted for comparing image data from the interpreter to image data for the plural images from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

an output interface for reporting results of the image data comparisons performed by the comparator.

\* \* \* \* \*

Exhibit 1
Page 16

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOHN B. ADRAIN, | Case No. 2:10–cv–173 |
| Plaintiff, | |
| vs. | DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT |
| VIGILANT VIDEO, INC., and THE CITY OF PORT ARTHUR, TEXAS, | |
| Defendants. | |

## I. STATEMENT OF THE ISSUES TO BE DECIDED

First, after the reexamination process concerning Plaintiffs' patent, do all of Plaintiff's identified claims derive exclusively from a "digital" camera and "digital" image data, in the sense that Plaintiff's camera outputs digital data? **[Yes.]**

Second (and related to the first issue), does Defendant Vigilant Video, Inc.'s purportedly infringing product / process utilize either a "digital" camera or "digital" image data, in the sense that Vigilant's camera outputs digital data? **[No.]**

Third, does Defendant Vigilant Video, Inc.'s purportedly infringing product / process utilize or incorporate "image data from [a] reference memory"? **[No.]**

Fourth, given the existence of a reexamined patent dated August 21, 2012, that substantially altered Plaintiff's original patent, does the "intervening rights" doctrine codified in 35 USC § 252 preclude Plaintiff from claiming any "damages" said to arise prior to August 21, 2012? **[Yes.]**

Page 1 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 1

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Plaintiff's May 26, 2010, "*Complaint*" (hereafter simply the "Complaint") alleges that Defendants have infringed and continue to infringe U.S. Patent No. 5,831,669 (hereafter simply "the Patent" or "Plaintiff's Patent"), issued in November, 1998.  (*Id.* [Docket Number 1], at 2, ¶ 8.)

2.    Plaintiff's original patent contained the following claims numbered 1 through 10:

"**1.**    A monitoring system comprising:

"a movably mounted camera adapted for receiving images of a space to be monitored;

"an interpreter for receiving image data from the camera;

"a reference memory for storing reference image data;

"a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

"an output interface for reporting results of the image data comparisons performed by the comparator.

"**2.**    A system according to claim 1 further comprising a programmer for inputting the comparison criteria to the comparator.

"**3.**    A system according to claim 2 wherein the programmer is connected for inputting analysis criteria to the interpreter and the interpreter is adapted for analyzing the image data according to the analysis criteria.

"**4.**    A system according to claim 3 wherein the programmer is connected for inputting learn criteria to the interpreter and the interpreter is connected for storing image data from the camera in the reference memory according to the learn and analysis criteria.

Page 2 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 2

"**5.**   A system according to claim 2 wherein the programmer is connected for in-putting learn criteria to the interpreter and the interpreter is connected for storing image data from the camera in the reference memory according to the learn criteria.

"**6.**   A system according to claim 2 wherein the programmer is connected for in-putting utilization criteria, the output interface being adapted for reporting selected comparison results according [to] the utilization criteria.

"**7.**   A system according to claim 1 wherein the camera is mounted on a vehicle.

"**8.**   A system according to claim 1 wherein the record memory is adapted for stor-ing information associated with the image data stored.

"**9.**   A system according to claim 1 wherein the interpreter selects images accord-ing to analysis criteria so that only the selected images are input to the comparator for comparison to reference images.

"**10.**   A system according to claim 9 wherein the selected images represent only portions of a larger image."

(Original Patent, at physical pages 6–7, columns 6 and 7; Declaration of Roy Thompson [hereafter simply the "Thompson Declaration"], Exhibit 1 [copy of original patent] [bold in document itself].)

3.   Plaintiff's Complaint asserts that Defendants infringed, and infringe, the Patent via their use of "image recognition systems and / or devices, including license plate recognition systems and / or devices, . . . such as at least the Vigilant CarDetector system." (*Id.*, at 2 [Docket Number 1], ¶ 10.)

4.   Plaintiff has not amended its 2010 complaint.

5.   Plaintiff's June 3, 2011, "*Disclosure Of Asserted Claims And Infringement Contentions*" (hereafter simply the "Disclosure Statement"), filed pursuant to L.R. 3–1, declares that ". . . Adrain asserts claims 1–3 and 6–10 of [the Patent] against defendants." (*Id.* [Docket Number 53], at 2, § 2.)

Page 3 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 3

6.    Plaintiff's Disclosure Statement further recites that

> "Adrain reserves the right to assert additional claims against defendants based upon results of discovery and further investigation."

(*Id.* [Docket Number 53], at 2, § 2.)

7.    Plaintiff has not asserted any "additional claims" against defendants predicated upon the "results of discovery and further investigation."

8.    Plaintiff's Disclosure Statement further recites that

> "[Defendants'] infringing products, services, and / or systems include at least the CarDetector Mobile License Plate Recognition System."

(*Id.* [Docket Number 53], at 2, §§ 3a and 3b.)

9.    Plaintiff has not amended its Disclosure Statement.

10.    On August 21, 2012, the United States Patent & Trademark Office (hereafter simply "the Patent Office") issued a new patent to Plaintiff after the conclusion of a Patent Office reexamination proceeding (hereafter simply the "reexamined Patent"). (Thompson Declaration, Exhibit 2.)

The reexamined Patent contains the following claims now pertinent to Plaintiff's claims against Defendants:

> **"Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**
>
> "AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:
>
> "Claims **1** and **11** are cancelled.
>
> "Claims **2** and **7-9** are determined to be patentable, as amended.
>
> "Claims **3** and **10**, dependent on an amended claim are determined to be patentable.
>
> "New claims **21–52** are added and determined to be patentable.

Page 4 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 4

"Claims **4–6** and **12–20** were not reexamined.

"Other new claims **53–56** were canceled by the Examiner's Amendment.

"**2.**    A system according to claim **[1]** *51* further comprising a programmer for inputting the comparison criteria to the comparator.

"**7.**    A system according to claim **[1]** *51* wherein the camera is mounted on a vehicle.

"**8.**    A system according to claim **[1]** *51* wherein the record memory is adapted for storing information associated with the image data stored.

"**9.**    A system according to claim **[1]** *51* wherein the interpreter selects images according to analysis criteria so that only the selected images are input to the comparator for comparison to reference images.

"* * * * *

"*51.  A monitoring system comprising:*

"*a movably mounted digital camera adapted for receiving images of a space to be monitored for directly outputting digital image data:*

"*an interpreter for receiving said digital image data from the digital camera;*

"*a reference memory for storing reference image data;*

"*a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and*

"*an output interface for reporting results of the image data comparisons performed by the comparator.*"

(Reexamined Patent, at physical pages 1 and 3, columns 1 and 4; Thompson Declaration, Exhibit

2 [copy of reexamined patent] [bold and italics as in document itself].)


Page 5 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 5

11. As it concerns the claims in Plaintiff's Disclosure Statement (*supra*, ¶ 4 [claims 1–3 and 6–10]), the reexamined Patent made the following changes to Plaintiff's original Patent claims:

    a.    Claim 1:   Cancelled

    b.    Claim 2:   Amended

    c.    Claim 3:   Derived from Amended Claim 2

    d.    Claim 6:   <Not reexamined>

    e.    Claim 7:   Amended

    f.    Claim 8:   Amended

    g.    Claim 9:   Amended

    h.    Claim 10: Derived from Amended Claim 9

(Reexamined Patent, at 1, column 1; Thompson Declaration, Exhibit 2 [copy of reexamined Patent].)

12. After reexamination, . . .

    a.    former Claim 1 no longer exists

    b.    amended Claims 2, 7, 8, and 9 now each derives from new Claim 51

    c.    Claim 3 now derives from amended Claim 2

    d.    Claim 10 now derives from amended Claim 9

    e.    Claim 6 did not expressly change, but it did impliedly change

(Reexamined Patent, at 1, column 1; Thompson Declaration, Exhibit 2 [copy of reexamined Patent].)

13. Although the reexamined Patent recites that the Patent Office did not reexamine original Claim 6, Claim 6 still expressly (and necessarily) derives from — or remains dependent upon — Claim 2 by virtue of its own wording, and the reexamination process amended Claim 2 to now speci-

Page 6 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 6

fically reference new Claim 51. (*See* reexamined Patent, at 1, column 1; Thompson Declaration, Exhibit 2 [copy of reexamined Patent].)

14.    Depicted graphically, the original and revised claim relationships appear as follows:

Original Claim Relationship Among Claims 1–3 and 6–10

| Claim 1 | | | |
|---|---|---|---|
| Claim 2 (dependent upon 1) | Claim 7 (dependent upon 1) | Claim 8 (dependent upon 1) | Claim 9 (dependent upon 1) |
| Claim 3 (dependent upon 2) · Claim 6 (dependent upon 2) | | | Claim 10 (dependent upon 9) |

Revised Claim Relationship
(after reexamination)

| Claim 51 (new) | | | |
|---|---|---|---|
| Claim 2 (amended to reference / dependent upon Claim 51) | Claim 7 (amended to reference / dependent upon Claim 51) | Claim 8 (amended to reference / dependent upon Claim 51) | Claim 9 (amended to reference / dependent upon Claim 51) |
| Claim 3 (dependent upon amended 2) · Claim 6 (dependent upon amended 2) | | | Claim 10 (dependent upon amended 9) |

(A hierarchical depiction of the facts in ¶¶ 10, 11, 12, and 13, just above; Declaration of Mark Kruse [hereafter simply the "Kruse Declaration"], at 4, ¶ 9.)

15.    Because amended Claims 2, 7, 8, and 9 all expressly derive from — or remain dependent upon — new Claim 51, the reexamination process necessarily supplanted (former) Claim 1 with Claim 51.

16.    New Claim 51 in the reexamined Patent reads — with emphasized text reflecting new text:

"51.  A monitoring system comprising:

"a movably mounted *digital camera* adapted for receiving images of a space to be monitored for directly outputting *digital image data*;

Page 7 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 7

"an interpreter for receiving said *digital image data* from the *digital camera*;

"a reference memory for storing reference image data;

"a comparator connected for comparing image data from the interpreter to image data from the reference memory according to selected comparison criteria, wherein the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory; and

"an output interface for reporting results of the image data comparisons performed by the comparator."

(Reexamined Patent, at 2, column 4; Thompson Declaration, Exhibit 2 [copy of reexamined Patent] [emphasis added].)

17.    New Claim 51 relates exclusively to a "digital" camera and "digital" image data (reexamined Patent at 3, column 4), in the sense that Plaintiff's camera system outputs digital data. The terms "digital camera" and "digital image data" appear twice each.

18.    After reexamination, all of Plaintiff's claims prove derivative of new Claim 51.

19.    The reexamination process has necessarily altered some pertinent claim constructions in the Court's July 5, 2012, *Markman* Order (see *Adrain v. Vigilant Video, Inc.*, 2012 WL 2595287 E.D. Texas 2012):

a.    This Court declared that the word "camera" in Plaintiff's claims shall bear "its plain and ordinary meaning." (*Markman* Order [Docket Number 108], at 7–9.) Claim 51 now utilizes the term "*digital* camera" (twice). (Reexamined Patent, at 2, column 4 [emphasis added]; Thompson Declaration, Exhibit 2 [copy of reexamined Patent].)

b.    This Court declared that the term "image data" in Plaintiff's claims shall connote "data related to an image." (*Markman* Order [Docket Number 108], at 12–15.) Claim 51 now

Page 8 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 8

utilizes the term "*digital* image data" (twice).  (Reexamined Patent, at 2, column 4 [emphasis added]; Thompson Declaration, Exhibit 2, [copy of reexamined Patent].)

      c.    This Court declared that the term "interpreter" in Plaintiff's claims shall connote "hardware and / or software that receives and selects image data from the camera." (*Markman* Order [Docket Number 108], at 18–20.)  Claim 51 now utilizes the terms "*digital* image data" (twice) and "*digital* camera" (twice).  (Reexamined Patent, at 2, column 4 [emphasis added]; Thompson Declaration, Exhibit 2 [copy of reexamined Patent].)

      d.    This Court declared that the term "comparator" in Plaintiff's claims shall connote "hardware and / or software that compares the image data from the interpreter to the reference image data." (*Markman* Order [Docket Number 108], at 20–21.)  Claim 51 now utilizes the terms "*digital* image data" (twice).  (Reexamined Patent, at 2, column 4 [emphasis added]; Thompson Declaration, Exhibit 2 [copy of reexamined Patent].)

### III.  THIS COURT'S SUMMARY JUDGMENT CRITERIA

#### 1.  Summary Judgment Enables The Court To Function As A Gatekeeper

"The purpose of summary judgment [in patent litigation] is to isolate and dispose of *factually unsupported* claims or defenses."

*Williams v. General Surgical Innovations, Inc.*, 2002 WL 32114466, at *1 (E.D. Texas 2002) (emphasis added).

In other words, "the court must make a threshold inquiry in determining whether there is a need for a trial." *Fiber Systems Intern., Inc. v. Applied Optical Systems, Inc.*, 2009 WL 3571350, at *1 (E.D. Texas 2009).

Page 9 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 9

### 2.  When Appropriate

The Court ought grant summary judgment when: (1) the pleadings, the evidence on file, and motion–specific affidavits or declarations demonstrate the absence of a "genuine" issue (or dispute) concerning any "material" fact, and, given that absence, (2) the substantive law that underlies the basis for the motion dictates the appropriateness of judgment in favor of the moving party. *Acticon Technologies LLC v. Creative Labs Inc.*, 2012 WL 708059, at *1 (E.D. Texas 2012) (emphasis added); *GTX Corp. v. Kofax Image Products, Inc.*, 571 F.Supp.2d 742, 745 (E.D. Texas 2008).

### 3.    Any Purported Fact Dispute Raised By The Non–Moving Part Must Implicate A "*Material*" Fact

Only disputes concerning facts that might directly affect the outcome of the litigation can preclude the entry of summary judgment.  *Paid Search Engine Tools, LLC v. Yahoo!, Inc.*, 746 F.Supp.2d 808, 812 (E.D. Texas 2010), *aff'd* 465 Fed.Appx. 953 (Fed.Cir. 2012); *Bright Response, LLC v. Google, Inc.*, 730 F.Supp.2d 610, 615 (E.D. Texas 2010).

### 4.  The Law That Underlies The Motion's Essential Thesis Determines "Materiality"

Only the specific substantive law that underlies the summary judgment motion's essential thesis determines which facts rise to the level of "material." *Paid Search Engine Tools, LLC v. Yahoo!, Inc.*, 746 F.Supp.2d 808, 812 (E.D. Texas 2010), *aff'd* 465 Fed.Appx. 953 (Fed.Cir. 2012); *Bright Response, LLC v. Google, Inc.*, 730 F.Supp.2d 610, 615 (E.D. Texas 2010).

Page 10 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 10

### 5.  Arguments That A Fact Dispute Exists Must Implicate A "Genuine" Controversy

The appropriateness of summary judgment separately depends upon the question whether the litigation any longer retains any "genuine" fact dispute, *viz*, whether a reasonable jury could rely upon any identifiable fact in dispute to return a verdict for one party or the other. *Paid Search Engine Tools, LLC v. Yahoo!, Inc.*, 746 F.Supp.2d 808, 812 (E.D. Texas 2010), *aff'd* 465 Fed.Appx. 953 (Fed.Cir. 2012); *Bright Response, LLC v. Google, Inc.*, 730 F.Supp.2d 610, 615 (E.D. Texas 2010). If a hypothetical reasonable jury would not view a particular fact dispute as pertinent to resolution of a contended matter, then the Court cannot label that dispute as implicating any "genuine" factual controversy for purposes of a motion for summary judgment.

Thus, summary judgment remains appropriate when no "reasonable jury could return a verdict for the **non**moving party" on the basis of a particular fact. *Minton v. National Ass'n of Securities Dealers, Inc.*, 226 F.Supp.2d 845, 857 (E.D. Texas 2002) (citation omitted) (emphasis added), *aff'd*, *Minton v. National Ass'n of Securities Dealers, Inc.*, 336 F.3d 1373 (Fed.Cir. 2003). The mere existence of some minor or inconsequential factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Acticon Technologies LLC v. Creative Labs Inc.*, 2012 WL 708059, at *1 (E.D. Texas 2012).

### 6.  Vigilant Shoulders The Initial Burden

Vigilant acknowledges that it, as moving party here, shoulders the initial burden to demonstrate the absence of any "genuine" dispute concerning any "material" fact with respect to the questions for decision framed at the outset of this motion. *Paid Search Engine Tools, LLC v. Yahoo!, Inc.*,

Page 11 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 11

746  F.Supp.2d 808, 812 (E.D. Texas 2010), *aff'd* 465 Fed.Appx. 953 (Fed.Cir. 2012); *Bright Response, LLC v. Google, Inc.*, 730 F.Supp.2d 610, 615 (E.D. Texas 2010).

7.    **The Non–Moving Party's Burden Encompasses An Affirmative Demonstration That: (1) Some "Material" Fact Precludes Summary Judgment, And (2) Any Dispute About That Fact Proves "Genuine"**

After Vigilant completes its job in this motion of demonstrating the absence of any "genuine" dispute concerning any "material" fact, then the evidentiary burden shifts, and Ioli shoulders the burden to identify the existence of both the existence of some "material" fact and the presence of some "genuine" dispute. *Paid Search Engine Tools, LLC v. Yahoo!, Inc.*, 746 F.Supp.2d 808, 812 (E.D. Texas 2010), *aff'd* 465 Fed.Appx. 953 (Fed.Cir. 2012); *GTX Corp. v. Kofax Image Products, Inc.*, 571 F.Supp.2d 742, 745 (E.D. Texas 2008).

8.    **In Patent Litigation, The Courts Assess The Meaning Of A Plaintiff's Claims By The Claims' Plain Language**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' [Citation omitted.]"

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*), *cert. den.*, *AWH Corp. v. Phillips*, 546 U.S. 1170 (2006).

"We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.' [Citations omitted.]"

*Id.*, at 1312.

Page 12 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 12

Thus, for instance the term "digital camera" — which references a camera process that outputs

digital data — necessarily excludes cameras that produce, or output, non–digital — *viz.*, analog —

data.

The meaning of Plaintiff's reexamined patent claims constitute a question of law for the Court,

and thus appropriate for summary judgment considerations. *Markman v. Westview Instruments, Inc.*,

52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).


## IV.  ARGUMENT

**1.    After The Patent Reexamination Process, All of Plaintiff's Identified Claims Derive Exclusively From A "Digital" Camera And "Digital" Image Data**

**2.    Defendant Vigilant Video, Inc.'s Purportedly Infringing Product / Process Involves Neither A "Digital" Camera Nor "Digital" Image Data**

Because Plaintiff has amended neither its Complaint nor its Disclosure Statement (Statement

Of Undisputed Material Facts, *supra*, ¶¶ 4–9), Plaintiff's claimed infringement stands or falls on the

viability of Claims 1–3 and 6–10, as reexamined by the Patent Office.

Summarized at the outset here, Vigilant's camera system cannot contravene Plaintiff's patent

claims for the following core reasons:

1.    Vigilant's camera comprises a camera that outputs a purely analog data signal.  Plaintiff's

system, on the other hand, outputs a digital signal.  (Kruse Declaration, at 3, ¶ 7a.)

2.    Vigilant's system performs no "image–data–to–image–data" comparison within any

"space being monitored."  Plaintiff's system, on the other hand, does precisely that.  (Kruse Declaration, at 3, ¶ 7b.)


Page 13 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 13

3.    Vigilant's system does not compare any camera data to other data generated by the same camera with the aid of any camera–generated, "reference" memory.  Plaintiff's system, on the other hand, does precisely that.  (Kruse Declaration, at 3, ¶ 7c.)

4.    Vigilant's system does not compare "pictures" to "pictures" to assess a pixel–by–pixel match.  Plaintiff's system, on the other hand, does precisely that.  (Kruse Declaration, at 3, ¶ 7d.)

### a.   Plaintiff's Claims Against Vigilant Depend Exclusively Upon A Digital Camera, *viz.*: A Camera That Outputs A Digital Signal

Under Plaintiff's original patent, Claims 2, 7, 8, and 9 each proved derivative of (or dependent upon) Claim 1.  Now, under Plaintiff's reexamined patent, amended Claims 2, 7, 8, and 9 each remains expressly derivative of (or dependent upon) new Claim 51.  *See* Statement Of Undisputed Material Facts, *supra*, ¶¶ 2, 5, 10, 11, 12, 13, 14, and 16; Kruse Declaration, at 3–4, ¶ 8; *see*, as well, Thompson Declaration, Exhibit 3 (Adrain 9 / 27 / 2012 deposition, at 64):

> "Q.  . . .  So is it your understanding that old Claim 1 is now new Claim 51?  Is that your understanding?
>
> "A.  I believe so."

*Id* (with Adrain answering).

Plaintiff has acknowledged that Claims 2, 7, 8, and 9 now represent claims derived from, or directly dependent upon, new Claim 51.  *See* Thompson Declaration, Exhibit 3 (Adrain 9 / 27 / 2012 deposition, at 110–12):

> "Q.  (By Mr. Thompson):  Mr. Adrain, isn't it true that all of the dependent claims that you have asserted that Vigilant Video infringes of your '669 patent, that is, Claims 2, 3, 6, 7, 8, 9, and 10 now depend from Claim 51 of the reexamined [']669 patent?

Page 14 –– DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 14

"[Objection to form of question.]

""* * * * *

"Q.   (By Mr. Thompson):  Isn't it true, Mr. Adrain, that all of the dependent claims you have asserted that Vigilant Video infringes of your [']669 patent, that is, Claims 2, 3, 6, 7, 8, 9 and 10 now depend eventually from Claim 51 of the reexamined [']669 patent"

"[Objection to form of question.]

"THE WITNESS:  No.

"Q.   Which ones don't?

"A.   Which ones don't what?

""* * * * *

"Q.   Just identify the ones that don't, you answered 'no,' please just tell me *which ones do not depend on new Claim 51*.

[Objection to form of question.]

"THE WITNESS:  So, *the ones that are dependent are 2, 7, 8 and 9*, the other ones aren't."

*Id* (Adrain answering) (emphasis added).

And, in turn, Claims 3, 6, and 10 now derive from (or depend directly upon) amended Claims 2 and 9.  (*See* Statement Of Undisputed Material Facts, *supra*, ¶¶ 10, 11, 12, 13, and 14; Kruse Declaration, at 4, ¶ 8.)

35 USC § 112 prescribes that conclusion:

"A claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

". . . [A] claim in dependent form *shall contain a reference to a claim previously set forth* and then specify a further limitation of the subject matter claimed.

Exhibit 2
Page 15

> A claim in dependent form *shall be construed to incorporate by reference all the limitations of the claim to which it refers.*"

(Emphasis added.)

But Claim 51 now confines Plaintiff's patent to a *digital* process; it incorporates the following descriptors:

> "a movably mounted *digital camera* adapted for receiving images of a space to be monitored for directly outputting digital image data,"

and

> "an interpreter for receiving said *digital image data* from the *digital camera*."

(Statement Of Undisputed Material Facts, *supra*, ¶ 16 [emphasis added]; Kruse Declaration, at 4, ¶ 10.)

Plaintiff himself acknowledges that, in his own words, for "some of [his] claims the scope has been narrowed slightly," during the reexamination process. *See* Kruse Declaration, at 4, ¶ 10; Thompson Declaration, Exhibit 3, (9 / 27 / 2012 Adrain deposition, at 55).

As the reexamined patent makes plain *vis–a–vis* the original patent, that "narrow[ing]" comprises the reexamined patent's reference to "digital," as that limiter did not previously exist. Kruse Declaration, at 4, ¶ 10. Plaintiff admits the "digital" limitation. *See* Thompson Declaration, Exhibit 3 (9 / 27 / 2012 Adrain deposition, at 66–67, 68–69):

> "Q.    (By Mr. Thompson):   Recognizing that [Claim] 51 has the term 'digital' in it, do you believe that to be infringing Claim 51, the camera must be digital?
>
> [Objection as to the form of the question.]
>
> "THE WITNESS:  Perhaps, with that particular claim . . . [.]
>
> "* * * * *

Page 16 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 16

"A.   Well, I see where the claim [*viz.*, Claim 51] has been narrowed to list the 'digital,' which I spoke in my testimony before that the scope was narrowed to digital."

(9 / 27 / 2012 Adrain deposition, at 66–67.)

❖❖❖

"Q.   Tell me exactly what's been modified from old Claim 1 to new Claim 51?

"A.   Well, it appears that the word 'digital' has been added.

"* * * * *

"Q.   . . . What's your understanding of the significance of the addition of the word 'digital' in front of the word 'camera'?

"A.   Well, on that particular claim it narrows the scope slightly."

(9 / 27 / 2012 Adrain deposition, at 68–69.)

And, in that vein, Plaintiff admits that "a digital camera outputs digital information" or "data." *See* Thompson Declaration, Exhibit 3 (9 / 27 / 2012 Adrain deposition, at 126). Plaintiff expressly agrees with "the dictionary meaning" of "digital camera." *Id.*


   **b.   Plaintiff's System Utilizes A Digital Camera That Takes Digital, Pixelated Images, And Outputs Those Images As Digital Data**

Plaintiff's system depends upon the utilization of a digital camera in the sense that it outputs a digital signal or data. It relays — or outputs — digital pixel data to an "interpreter," which, in turn, relays that digital pixel data to a "comparator" that, in turn, performs a pixel–by–pixel digital comparison utilizing stored pixelated digital image data (taken by the same camera) in a reference memory. Kruse Declaration, at 5, ¶ 11.


Page 17 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 17

### c. Vigilant's System Utilizes An Analog Camera That Outputs Only Analog Data

Vigilant's system, on the other hand, does not output any "digital" product or process like that utilized by Plaintiff. Rather, Vigilant's system utilizes an analog camera, *viz.*, a camera that outputs an analog NTSC signal of the picture taken of a license plate. The camera transmits that analog video signal to a digital signal processor for purposes of producing a distinct binary computer code associated with each image after optical character recognition has been performed. (Kruse Declaration, at 5, ¶ 12.)

Whenever the Vigilant system later conducts a license plate comparison, it compares an ASCII–based character string with another ASCII–based character string that has been input to a remote data base — in other words, a code–to–code comparison devoid of any "image" comparisons. Comparisons occur only between alphanumeric character strings, not "images," because the Vigilant analog system output does not utilize digital "image" elements such as pixels or graphics for comparisons. Rather, Vigilant's OCR process converts pure analog output — video images of a license plate — into an ASCII character string of alphanumeric components, following which the Vigilant system compares the ASCII characters against an external data base of ASCII characters, none of which originate with Vigilant's camera system. (Kruse Declaration, at 5, ¶ 13.)

Furthermore, no "on–board" comparison of data occurs within the Vigilant camera system. Vigilant's system does not compare any captured image data or image elements from the camera to an existing storage of reference image data from the same camera. Stated differently, Vigilant's system does not utilize the digital pixel–by–pixel comparison methodology employed by Plaintiff's system. Instead, it utilizes an external data base — a data base that does not derive from any camera — to compare ASCII codes to ASCII codes. (Kruse Declaration, at 5–6, ¶ 14.)

Page 18 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 18

### 3. Defendant Vigilant Video, Inc.'s Purportedly Infringing Product / Process Neither Utilizes Nor Incorporates "Image Data from [A] Reference Memory"

Claim 51 — from which all of Plaintiff's existing claims derive — utilizes a "reference memory" component, *viz*.:

"a *reference memory* for storing reference image data;

"a comparator connected for comparing image data from the interpreter to image data from the *reference memory* according to selected comparison criteria . . . [.]"

(Statement of Undisputed Material Facts, *supra*, ¶ 17 [emphasis added]; Kruse Declaration, at 6, ¶ 16.)

Defendant Vigilant's system, on the other hand, neither utilizes nor incorporates "image data from [a] reference memory." (Kruse Declaration, at 6, ¶ 15.)

In its *Markman* Order, this Court declared the phrase "reference memory" shall connote "data storage that stores data related to an image that is used as a reference for comparison." (*Markman* Order [Docket Number 108], at 16–17.) The recently–completed patent reexamination process did not alter that construction.

### a. Plaintiff's System Employs A "Reference Memory" Of Digital Image Data

Plaintiff's monitoring system stores image data taken from the camera in a (presumably non–volatile) reference memory. The image data goes into the interpretor, and then into the reference memory or to the comparator. Claim 51 renders the presence and utilization of that process both indispensable and incontrovertible. (Kruse Declaration, at 6, ¶ 18.)

Plaintiff's system then utilizes a comparator to utilize and process that same image data. The comparator compares image data from the reference memory to image data from the interpretor, both

Page 19 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 19

of which obtain their image data from the same camera.  Again, Claim 51 renders the presence and

utilization of that process both indispensable and incontrovertible.  (Kruse Declaration, at 6–7, ¶ 19.)

Plaintiff's monitoring system generates all of its image data from the camera; it neither utilizes

nor incorporates any imported image data.  Plaintiff's system stores image data in the reference me-

mory that the system later uses as a reference for comparisons with the other image data taken before

the comparison.  Stated differently, Plaintiff's monitoring system compares contemporaneously–ta-

ken image data from the camera to image data previously taken from the same camera.  The compari-

son proceeds pixel by pixel, as that process remains the only way to compare images within Plain-

tiff's system.  (Kruse Declaration, at 7, ¶ 20.)

More tersely stated, Plaintiff's system creates, and then utilizes, its own "reference memory"

for comparisons.


   **b.**   **Vigilant's System Does Not Employ A "Reference Memory"; Rather, It Uti-
            lizes An External Data Base Comprised Entirely Of Non–Digital ASCII Data**

Vigilant's system, on the other hand, does not store any reference image data in memory be-

cause it utilizes no image data — *viz.*, pixel–by–pixel — comparisons.  (Kruse Declaration, at 7,

¶ 21.)

Rather, Vigilant's system compares data from the camera in a non–image format to data from

an external database — also in non–image format — whose data did not come from that, or any oth-

er, camera.  Any comparisons occur via comparisons of ASCII–character strings only — and ASCII–

character strings do not constitute "image data."  Moreover, the remote database that Vigilant's

system utilizes for comparisons maintains only ASCII–character–string data, not reference "image

Page 20 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 20

data" of any sort. And Vigilant neither creates nor operates that remote database. (Kruse Declaration, at 7, ¶ 22.)

Stated differently, Vigilant's system does not compare image data to image data, but, instead, compares code data (alphanumeric ASCII strings) to code data from an external database. It never compares images via a pixel–to–pixel comparison between data. Quite simply, the Vigilant system simply compares totally different elements. (Kruse Declaration, at 8, ¶ 23.)

**4.    35 USC § 252 And The "Intervening Rights" Doctrine Precludes Plaintiff From Claiming Any "Damages" For The Period That Preceded The Issuance Of The Reexamed Patent On August 21, 2012**

As a result of the reexamination process, 35 USC § 252 and the "intervening rights" doctrine precludes Plaintiff from claiming any damages that purportedly accrued prior to August 21, 2012.

The Patent Office issued Plaintiff's reexamined patent on August 21, 2012, in accordance with 35 USC § 307(a), which declares:

> "(a)   In a reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate **[1]** *canceling* any claim of the patent finally determined to be unpatentable, **[2]** *confirming* any claim of the patent determined to be patentable, and **[3]** *incorporating* in the patent any proposed amended or new claim determined to be patentable."

(*Id.* [emphasis and enumeration added].)

Plaintiff's reexamined Patent includes all three types of reexamined claims — per 35 USC § 307(a) above — pertinent to Plaintiff's original Disclosure Statement, *viz.*: (1) the cancellation of original Claim 1; (2) the confirmation of Claims 3, 6, and 10; and (3) the incorporation of amended Claims 2, 7, 8, and 9.

Page 21 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 21

35 USC § 307(b) separately addresses the question of post–reexamination damages:

> "(b)   Any proposed *amended* or *new claim* determined to be patentable and incor-
> porated into a patent following a reexamination proceeding *will have the same ef-*
> *fect as that specified in section 252* of this title for reissued patents on the right of
> any person who [1] *made*, purchased, or used within the United States, or imported
> into the United States, anything patented by such proposed amended or new claim,
> or who [2] made *substantial preparation for the same*, prior to issuance of a certi-
> ficate under the provisions of subsection (a) of this section."

(*Id.* [emphasis and enumeration added].)

In turn, the text in 35 USC § 252 — which § 307(b) references — provides two pertinent provi-

sions concerning patent damages:

> ". . .  [1] A reissued patent *shall not abridge or affect the right* of any person or
> that person's successors in business who, *prior to the grant of a reissue*, made,
> purchased, offered to sell, or used within the United States, or imported into the
> United States, anything patented by the reissued patent, to continue the use of, to
> offer to sell, or to sell to others to be used, offered for sale, or sold, the specific
> thing so made, purchased, offered for sale, used, or imported *unless* the making,
> using, offering for sale, or selling of such thing infringes a valid claim of the reis-
> sued patent which was in the original patent.

> "[2] The *court before which such matter is in question* may provide for the *conti-*
> *nued* manufacture, use, offer for sale, or sale of the thing made, purchased, offered
> for sale, used, or imported as specified, or for the manufacture, use, offer for sale,
> or sale in the United States *of which substantial preparation was made before the*
> *grant of the reissue*, and *the court* may also provide for the *continued* practice of
> any process patented by the reissue that is practiced, or for the practice of which
> substantial preparation was made, *before the grant of the reissue*, to the extent and
> under such terms as the court deems equitable *for the protection of investments*
> *made or business commenced before the grant of the reissue*."

(*Id.* [emphasis and enumeration added] [broken into paragraphs for ease of reading].)

35 USC § 252 incorporates the patent law concept of "intervening rights" in the two enumera-

ted sentences. *See Sontag Chain Stores Co. v. Nat'l Nut Co.*, 310 U.S. 281, 293–95 (1940).  Per the

Federal Circuit Court of Appeals, 35 USC § 252 embodies two related concepts:

Page 22 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 22

> "With respect to reissued patents [after reexamination], the concept of intervening rights was codified by the Patent Act of 1952 [Act of July 19, 1952, ch. 950, 66 Stat. 808, now codified as 35 USC § 252], and the statute provides for *two types of intervening rights*: (1) intervening rights that abrogate liability for infringing claims added to or modified from the original patent *if the accused products were made or used before the reissue*, often referred to as *absolute intervening rights*; and (2) *intervening rights that apply as a matter of judicial discretion* to mitigate liability for infringing such claims even as to products made or used *after* the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue, often referred to as *equitable intervening rights*."

*Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361–62 (Fed. Cir. 2012) (*en banc*) (emphasis added).

The reference in 35 USC § 252 to "reissued" patents — instead of "reexamined" patents — proves of no moment; 35 USC § 307(b), *supra*, renders § 252 applicable to the reexamination process:

> "Although intervening rights originated as a defense against patents modified through reissue procedures, the doctrine has since been extended to the context of patent *reexamination*."

*Marine Polymer*, *supra*, 672 F.3d at 1362 (emphasis added).

As a matter of law, Vigilant possesses the statutory rights described in 35 USC § 252 belonging to one who sold products "prior to the grant of a [reexamined patent]" — or, in the language of the *Marine Polymer Technologies* opinion, above, "absolute intervening rights" for all products made, used, or sold prior to the August 21, 2012, issuance of Plaintiff's reexamined Patent. (It may well possess "equitable intervening rights" as well, but the latter form no issue in this motion for summary judgment.)

Page 23 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 23

Any "intervening rights" analysis depends upon the extent to which a patent reexamination process results in a "substantive" alteration of original patent claims.

> "A patentee of a reexamined patent is entitled to infringement damages, *inter alia*, for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims *if the original and reexamined claims are 'identical.'* [Citations omitted.] Reexamined claims are 'identical' to their original counterparts *if they are 'without substantive change.'* . . . If *substantive changes* have been made to the original claims, the patentee is entitled to infringement damages *only* for the period *following* the issuance of the reexamination certificate. [Citation omitted.]"

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (emphasis added). *See also Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989) ("If [claims in a reexamined patent prove] *not* 'identical' [to claims in the original patent], the patentee has no right to recover infringement damages for periods *prior* to the date that the reexamination certificate issued." [Emphasis added.]), applied in *DuVal Wiedmann, LLC v. InfoRocket.com, Inc.*, 620 F.3d 496, 504 (5th Cir. 2010), to reject claim for license fees said to have accrued prior to reexamination.

The reexamination process in this instance indeed incorporated a "substantive change" to Plaintiff's original patent, specifically, new Claim 51 — upon which all of Plaintiff's now derive — which expressly confines itself to a digital output process. The original patent most certainly did not. Thus, given the substantially–altered nature of Plaintiff's claims as the result of the patent reexamination process, Plaintiff's claim for any damages against Defendants cannot include damages that purportedly arose prior to the reexamination date of August 21, 2012 — at which point Plaintiff's claims became limited to "digital" camera–based claims.

Plaintiff's "reexamined claims" in fact bear a decidedly substantive change, and as a matter of patent law Plaintiff, in the words of the Federal Circuit Court of Appeal in *Laitram Corp.*, *supra*,

Exhibit 2
Page 24

"is entitled to infringement damages only for the period *following* the issuance of the reexamination

certificate" (*id.*, 163 F.3d at 1346 [emphasis added]) — or after August 21, 2012.

DATED:   November 30, 2012                    THOMPSON BOGRÁN, P.C.

     /s/ Roy B. Thompson
Roy B. Thompson, *pro hac vice*
15938 SW Quarry Rd., Suite B-6
Lake Oswego, OR 97035
Telephone:    503-245-6600
Facsimile:    503-244-8399
roythompson@comcast.net

MARK S. HUBERT, PC
Mark S. Hubert, *pro hac vice*
2300 SW First, Suite 101
Portland, OR 97201
Telephone:    503-234-7711
Facsimile:    503-224-0092
MarkHubert@pacifier.com

Attorneys for Defendant Vigilant Video, Inc.

Page 25 — DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Exhibit 2
Page 25

## CERTIFICATE OF SERVICE

The undersigned certifies that he served a copy of this document on counsel of record via e–mail on November 30, 2012.

**THOMPSON BOGRÁN, P.C.**

   /s/ Roy B. Thompson     
Roy B. Thompson, *pro hac vice*
15938 SW Quarry Rd., Suite B-6
Lake Oswego, OR 97035
Telephone:    503-245-6600
Facsimile:     503-244-8399
roythompson@comcast.net

# EXHIBIT 3

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| JOHN B. ADRAIN, | § | |
| | § | |
| Plaintiff, | § | CASE NO. 2:10-cv-173-JRG |
| | § | |
| v. | § | |
| | § | |
| VIGILANT VIDEO, INC. and THE CITY | § | |
| OF PORT ARTHUR, TEXAS, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is John B. Adrain's Opposed Motion for Leave to Amend Disclosure of Asserted Claims and Infringement Contentions (Dkt. No. 121), Defendants' Joint Motion for Summary Judgment (Dkt. No. 126), and related briefing. In Adrain's Motion for Leave, Plaintiff seeks to amend its infringement contentions to incorporate newly-issued claims in the reexamined '669 patent, specifically new claims 30-32, 35-39, and 41-42. After carefully considering the parties' written submissions, the Court finds as follows:

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This suit was originally filed on May 26, 2010 alleging infringement of U.S. Patent No. 5,831,669 ("the '669 patent"). Plaintiff's original infringement contentions asserted claims 1-3 and 6-10 of the '669 patent. On September 14, 2010, Defendant Vigilant filed a request for re-examination of the '669 patent with the USPTO, which was granted. Subsequently, on April 11, 2012, the Court held a *Markman* hearing and issued a Memorandum and Opinion (Dkt. No. 108) on July 5, 2012. Thereafter on August 21, 2012, the USPTO issued a re-examination certificate for

1

Exhibit 3
Page 1

the '669 patent cancelling claim 1, amending claims 2-3 and 7-10 (claims 3 and 10 are determined to be patentable as dependent on an amended claim), and issuing new claims 30-32, 35-39, and 41-42.

Plaintiff Adrain filed the present motion to amend its Infringement Contentions on October 17, 2012 to assert claims 6, 30-32, 35-39, and 41-42 against Defendants. If granted leave to amend, Adrian intends to withdraw assertion of claims 1-3 and 7-10. (Dkt. No. 127, at 1.) Claim 6 was not subject to reexamination and Plaintiff intends to include it in its amended Infringement Contentions.

On November 30, 2012, Defendants filed a Joint Motion for Summary Judgment of Noninfringement in light of the reexamination certificate. Procedurally, discovery closed on January 31, 2013 and jury selection was scheduled for June 3, 2013. However, due to the Court's schedule unrelated to either Motion, the jury selection date has been moved to August 5, 2013.

## II.    ANALYSIS

Local Patent Rule 3-6(b) allows a party to supplement its Infringement Contentions "only by order of the Court, which shall be entered only upon a showing of good cause." While the Court has broad discretion to grant motions to amend, it should consider four factors: (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Arbitron, Inc. v. Int'l Demographics Inc.*, 2009 WL 166555, at *1 (E.D. Tex. 2009).

Here, the reexamination certificate issued on August 21, 2012 and Adrian sought to amend its Infringement Contentions on October 17, 2012. Adrian could not have amended its contentions

Exhibit 3
Page 2

to add newly-issued claims before the reexamination certificate issued, and the Court does not find that the two month interval amounts to an unreasonable delay. Defendant, in its response briefing, appears to demand a fuller explanation for this amendment, but it is unclear to the Court that anything further needs to be said. The Court finds that the first factor is met.

Regarding the second factor, Plaintiff contends the newly-issued claims are important because they do not require the "digital camera" limitation. The originally-asserted dependent claims were all directly or indirectly dependent on claim 1, which did not contain a "digital camera" limitation. However, claim 1 was canceled during reexamination and the claims that depended on claim 1 were amended to depend instead from new claim 51. The new claim 51 contained a "digital camera" limitation and, as a result, that limitation is now imported into the dependent claims. The importance of the "digital camera" limitation is further evidenced by being the main basis of Vigilant's argument in its Motion for Summary Judgment as to why it does not infringe (Dkt. No. 126). The Court finds the second factor weighs in favor of granting leave to amend.

The third factor concerns potential prejudice to the nonmoving party. In an element-by-element comparison of the original claim 1 and the newly-issued claim 30, it is clear that the claims are very similar except for an additional limitation in claim 30 that relates to infrared cameras. (Dkt. No. 121 at 5.) Additionally, the originally-asserted claims 2-3 and 6-10 are identical to the newly-issued claims 31-32 and 35-39, except for the latters' dependence on claim 30 rather than claim 1. (*Id.* at 5-7.) Considering the similarities, the Court disagrees with Vigilant's assertion that these new claims "bear no relationship whatsoever to any of the claims that Plaintiff has pursued throughout this litigation." (Dkt. No. 125 at 6.) It is telling, in the Court's view, that

Exhibit 3
Page 3

Vigilant does not point to a single term in the re-examined claims that would necessitate additional construction. (Dkt. No. 129 at 4.) Plaintiff submits, and the Court agrees, that no new terms need to be construed from the addition of these claims, and Plaintiff's infringement theories would remain the same. (Dkt. No. 121 at 7.) The Court finds the third factor of prejudice to be *de minimis*, at best, and as such finds this factor weighs in favor of granting leave to amend.

The last factor is the availability of a continuance to cure any potential prejudice. For unrelated reasons, the Court has moved the June 3, 2013 jury selection date to August 5, 2013, giving the parties two more months until trial. Thus, any potential prejudice to Defendants would be alleviated by this unrelated extension of time. Accordingly, the Court finds that the fourth factor also weighs in favor of granting leave.

After weighing each of the four factors, the Court finds that Plaintiff has shown good cause to amend its infringement contentions.

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In the Motion for Summary Judgment (Dkt. No. 126), Defendants essentially seek the Court to find that (i) it does not infringe the originally-asserted dependent claims that now depend from claim 51 in the reexamined '669 patent, and (ii) the intervening rights doctrine precludes Plaintiff from claiming damages prior to August 21, 2012, the date the reexamination certificate was issued. As the Court has granted Plaintiff leave to amend its Infringement Contentions, none of the newly-asserted claims depend from claim 51.[1] Accordingly, Defendants' first request is moot and the Court consequently turns to the issue of intervening rights.

The doctrine of intervening rights is codified in 35 USC § 252 and "originated as a defense

---

[1] Claim 6 still exists as originally issued, including its dependence from the canceled claim 1 and original claim 2. *See* § MPEP 2260.01.

4

Exhibit 3
Page 4

against patents modified through reissue procedures." *Marine Polymer Technologies, Inc. v. Hemcon, Inc.*, 672 F.3d 1350, 1361 (Fed. Cir. 2012). Two types of intervening rights exist: (1) absolute intervening rights are "intervening rights that abrogate liability for infringing claims added to or modified from the original patent if the accused products were made or used before the reissue," and (2) equitable intervening rights, which are "intervening rights that apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue." *Id.* at 1361-62. The doctrine has since been extended to the context of *ex parte* and *inter partes* reexaminations. *Id.* After a patent emerges from reexamination, absolute and equitable intervening rights are available "to the same extent provided in the reissue statute, but only with respect to 'amended or new' claims in the reexamined patent." *Id.* However, the doctrine of intervening rights applies only where a claim's scope has been substantively changed. *Id.* at 1362.

As the Court has granted Plaintiff leave to amend its Infringement Contentions, Plaintiff now asserts infringement of claims 6, 30-32, 35-39, and 41-42 of the '669 patent. Each of those claims, with the exception of claim 6, was added during reexamination and contains an additional limitation relating to an infrared camera that did not exist in the original '669 patent. Therefore, this new limitation constitutes a substantive change, and the doctrine of intervening rights applies to claims 30-32, 35-39, and 41-42.

The record is clear that claim 6 was not subject to the reexamination proceeding. Under MPEP § 2260.01, the content of the canceled base claim is to be read as a part of the confirmed or allowed dependent claim. The fact that claim 1 was canceled and claim 2 was amended during

5

Exhibit 3
Page 5

reexamination does not alter the application of MPEP § 2260.01, so claim 6 still exists as originally issued. As such, the doctrine of intervening rights does not apply to claim 6 because it is neither amended nor new.

Accordingly, the Court finds that the doctrine of intervening rights precludes recovery of damages prior to August 21, 2012 for claims 30-32, 35-39, and 41-42, but not for claim 6 of the '669 patent. The inception date for recovery of damages, if any, for claim 6 of the '669 patent shall be governed by 35 U.S.C. § 286.

## IV.    CONCLUSION

Having considered the parties arguments, the Court finds Plaintiff has shown good cause to amend its Infringement Contentions. For the reasons set forth above, Plaintiff's Motion for Leave is hereby **GRANTED.** Defendants' Motion for Summary Judgment is hereby **GRANTED-IN-PART** as to the application of the doctrine of intervening rights as to claims 30-32, 35-39, and 41-42 of the '669 patent, as set forth above, but such Motion for Summary Judgment is **DENIED** in all other respects.

**So ORDERED and SIGNED this 13th day of May, 2013.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

Exhibit 3
Page 6

# EXHIBIT 4

# EXHIBIT A

## JUNE 26, 2013 USPTO OFFICE ORDER GRANTING REEXAMINATION OF US PATENT NO. 5,831,669

Exhibit 4
Page1

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

MARK S. HUBERT

2300 SW FIRST AVENUE

SUITE 101

PORTLAND, OR  97201

**MAILED**

JUN 26 2013

CENTRAL REEXAMINATION UNIT

## EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/012,882_.

PATENT NO. _5,831,669_.

ART UNIT _3992_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

Exhibit 4
Page2

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,882 | 05/30/2013 | 5,831,669 | | 4354 |

116        7590        06/26/2013
PEARNE & GORDON LLP
1801 EAST 9TH STREET
SUITE 1200
CLEVELAND, OH 44114-3108

| EXAMINER |
|---|
| AHMED, SALMAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/26/2013 | PAPER |

Please find below and/or attached an Office communication concerning this application or proceeding.

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

Exhibit 4
Page3

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No.<br>90/012,882 | Patent Under Reexamination<br>5,831,669 |
|---|---|---|
| | Examiner<br>SALMAN AHMED | Art Unit<br>3992 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 May 2013</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,   b)☒ PTO/SB/08,   c)☐ Other: _____

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐  by Treasury check or,

   b) ☐  by credit to Deposit Account No. _____,  or

   c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

| /Salman Ahmed/<br>Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action In *Ex Parte* Reexamination          Part of Paper No. 20130614

Exhibit 4
Page4

Application/Control Number: 90/012,882                                      Page 2
Art Unit: 3992

## DECISION GRANTING *EX PARTE* REEXAMINATION

1.      A substantial new question of patentability affecting claims 6, 30-32, 35-39

and 41-42 of United States Patent Number 5,831,669 (hereinafter '669 patent) is

raised by the request for *Ex parte* reexamination dated 5/30/2013 and ordered by

the Examiner.


### *Information Disclosure Statement*

2.      The information disclosure statements (IDS) submitted by the Requester

on 5/30/2013 have been considered by the examiner to the extent that they have

been explained in the submissions.


### *References Cited in the Request*

3.      The Request identifies the following printed publications as providing

teachings relevant to the claims of the '669 patent.

| U.S Patent Number | Issue Date |
| --- | --- |
| 4,603,390 (Mehdipour) | July 29, 1986 |
| 4,611,347 (Netravali) | September 9, 1986 |
| 4,878,248 (Shyu) | October 31, 1989 |
| 5,097,328 (Boyette) | March 17, 1992 |
| 5,425,108 (Hwang) | June 13, 1995 |


### *Issues Raised in the Request*

4.      The Requester stated in SNQ's as follows:

        Claim 6 of U.S. Patent 5,831,669 is unpatentable under 35 U.S.C 102(b) as being
5.      anticipated by U.S. Patent No. 4,611,347 (Netravali)


Exhibit 4
Page5

Application/Control Number: 90/012,882                                      Page 3
Art Unit: 3992

6.    Claim 6 of U.S. Patent 5,831,669 is unpatentable under 35 U.S.C 102(b) as being anticipated by U.S. Patent No. 4,603,390 (Mehdipour)

7.    Claim 6, 31-32, 35, 37-39, and 41-42 of U.S. Patent 5,831,669 is unpatentable under 35 U.S.C 102(b) as being anticipated by U.S. Patent No. 5,097,328 (Boyette)

8.    Claims 36 of U.S. Patent 5,831,669 is unpatentable under 35 U.S.C 103 as being obvious over U.S. Patent No. 5,097,328 (Boyette) in view of U.S. Patent 5,425,108 (Hwang)

9.    Claims 6, 31-32, 35-39, and 41-42 of U.S. Patent 5,831,669 is unpatentable under 35 U.S.C 103 as being obvious over U.S. Patent No. 4,603,390 (Mehdipour) in view of U.S. Patent 5,425,108 (Hwang) in further view of 4,878,248 (Shyu)

*Prosecution History*

**'669 Patent prosecution history**

The '669 Patent issued Nov. 3, 1998 with claims 1-20, from Patent

Application Serial No. 08/677,100, filed July 9, 1996 with claims 1-32. Although

the Examiner did not give any formal reason for allowance, however, the

Applicant stated in the remark section, the following:

```
None of the references teach selection of
recognizable portions of image data from among
unrecognizable portions of image data.  This feature
enables the invention to use a moving camera, mounted on
a vehicle for example.  Changing background images can be
disregarded while relevant objects are identified and
analyzed.  For example, all images would be ignored
except those appearing as license plates, which would be
analyzed, as described in the specification beginning at
page 10, line 9.
```

During the prosecution of the '669 patent, claim 6 was rejected as follows:

Exhibit 4
Page6

Application/Control Number: 90/012,882                                    Page 4
Art Unit: 3992

specified in Claims 2 and 26; and wherein the programmer is
connected for inputting utilization criteria, the output
interface being adapted for reporting selected comparison results
according to the utilization criteria (Col. 5, lines 3-17), as
specified in Claims 6, 23 and 27; and further comprising a record

### '669 Reexamination history (90/011,233)

10.    An *Ex parte* reexamination of '669 was filed on 9/14/2010 for claims 1-3 and 7-11 for which an Order was granted on 12/10/2010.

11.    A non-final rejection was mailed on 6/3/2011 rejecting the claims 1-3 and 7-11.

12.    In response on 8/3/2011, the Patent Owner amended claims 1 and 11 clarifying that the camera being a "digital" camera, and that it is for outputting "digital" image. Patent Owner also added new claims 21-56. New independent claim 51 incorporated all of the limitations of the original claim 1, and also recited a second camera adapted for receiving additional images of the space.

13.    In a Final Rejection mailed 11/23/2011, Examiner rejected claims 1-3, 7-11, 21, 22, 24-26 and 28-56 while objecting to 23 and 27.

14.    In response on 1/19/2012, Patent Owner amended claims 1, 11, 21, 24-25, 29-30, 42-48, 50-51, 53, and 56. New claims 57-59 were also added. Claim 51 was further amended clarifying that images that have changed in the space are detected and stored in a memory.

15.    An Advisory Action was mailed on 2/10/2012 with denial of entry of amendment by the Office.

Exhibit 4
Page7

Application/Control Number: 90/012,882                                      Page 5
Art Unit: 3992

16.    A second Advisory Action was mailed on 3/26/2012 stating that the

proposed new or amended claim(s) 1-3,7-11 and 21-56 would be allowable if

submitted in a separate, timely filed amendment canceling the non-allowable

claim(s).

17.    Patent Owner responded on 4/10/2012 with the comments that new

claims 60-62 that are newly added in this response are not part of the re-

examination, because they merely put claims 4-6, respectively, into independent

form using the original language in the granted patent. Because claims 4-6 are

not undergoing reexamination, these claims represent no change in scope in the

granted patent and thus raise no issues, and are therefore allowable.

18.    On 6/22/2012 a NIRC was issued with claims 1, 11 and 53-56 being

cancelled, 21-52 being patentable, while claims 4-6 and 12-20 not being

reexamined.

19.    In regard to claim 51, Examiner stated in the NIRC:

Regarding independent claims 51 and 52, each recites, *inter alia*, the uniquely

distinct features: "a movably mounted digital camera 12 adapted for receiving images of

a space 14 to be monitored for directly outputting digital image data" and "the interpreter

16 and comparator 22 cooperate to select recognizable portions of image data among

unrecognized portions of image data in the space being monitored 14; the selected image

portions being compared to the image data in the reference memory 20", *see id.*, the '699

patent Figure 1;

In regards to claim 30, Examiner stated in the NIRC:

Exhibit 4
Page8

Application/Control Number: 90/012,882                                                   Page 6
Art Unit: 3992

Regarding independent claims 30 and 45, each recites, *inter alia*, the uniquely distinct feature: "a movably mounted camera 12 adapted for receiving images of a space 14 to be monitored by detecting RADAR, thermal, or infrared images or for detecting images through an opaque material" (claim 30).

Examiner of the reexamination further stated in the NIRC that Netravali, Hwang, Mehdipour and Boyette alone or in combination fail to teach above features.

### *Substantial New Question of Patentability Analysis*

For the purpose of the instant reexamination, Examiner will use the following limitations to consider the presence or absence of a substantial new question of patentability:

For dependent claim 6:

*... a movably mounted digital camera adapted for receiving images of a space to be monitored for directly outputting digital image data...the interpreter and comparator cooperate to select recognizable portions of image data among unrecognized portions of image data in the space being monitored, the selected image portions being compared to the image data in the reference memory...*

Exhibit 4
Page9

Application/Control Number: 90/012,882                                              Page 7
Art Unit: 3992

<u>For independent Claim 30</u>

...a movably mounted camera adapted for receiving images of a space to
be monitored by detecting RADAR, thermal, or infrared images or for detecting
images through an opaque material;...

Examiner submits that, although, Netravali, Hwang, Mehdipour and
Boyette prior art were made available to, and was reviewed by the Examiner
during the previous reexamination of the '669 patent, however, current Examiner
will consider whether the Requester has presented cited Netravali, Hwang,
Mehdipour and Boyette prior art in a new light or a different way that escaped
review during earlier reexamination. In the implementation of the 2002 Act,
MPEP § 2242, subsection II.A. was revised. The revision permits raising a
substantial new question of patentability based solely on old art, but only if the
old art is "presented/viewed in a new light, or in a different way, as compared
with its use in the earlier concluded examination(s), in view of a material new
argument or interpretation presented in the request." Thus, a request may
properly raise an substantial new question of patentability by raising a material
new analysis of previously considered reference(s) under the rationales
authorized by KSR.

Netravali prior art discloses an image recognition system uses feature or
attribute matching for fast coarse selection of a group of reference images which
closely resemble an unknown image and thereafter selects the best reference

Exhibit 4
Page10

Application/Control Number: 90/012,882                              Page 8
Art Unit: 3992

image match from that group using 2-dimensional intensity correlation or
template matching.



FIG. 2

The system provides highly accurate image recognition without resorting

to time consuming exhaustive search by template matching (Abstract). Netravali

further discloses (Column 1) video image (or any two dimensional data) being

segmented into two or more regions, the curvature and orientation attributes of

selected local features of each region are determined and screened against the

respective attributes of reference patterns stored in an attribute memory and the

reference patterns are identified and retrieved from memory.  For each of the

reference patterns, a horizontal and a vertical offset is computed by matching

each of the selected local features against each of the reference features.  The

closest reference pattern for each region of the video image is determined by

aligning each region against the reference patterns using the offsets and

matching the intensity thereof.  Thus, the present invention selects a group of

reference images using feature attribute matching for fast coarse searching and

Exhibit 4
Page11

selects the best reference image from that group using intensity or template matching for fine matching.  This approach keeps the accuracy of recognition high without resorting to the time consuming exhaustive search by template matching.

Mehdipour prior art discloses in abstract: a computerized parking system which includes a first camera for reading the license plate of a vehicle entering a parking area, and a second camera for reading the license plate of the vehicle as it leaves the parking area.  In each instance, the letters and numbers on the license plate of each vehicle are converted into digital signals.  The system responds to the digital signals from the cameras to determine the time of entry and time of exit of the vehicle, and the time vehicle remained in the parking area is then determined.  The parking fee due for each vehicle is computed on the basis of a predetermined rate or rates and on the time in which the particular vehicle remained in the parking area.  The system then produces a ticket, or a visual display, at a cashier's station at the exit on which the amount to be paid is recorded, and when that amount is paid the cashier opens the gate.

Exhibit 4
Page 12

Application/Control Number: 90/012,882                                    Page 10
Art Unit: 3992



Mehdipour further discloses column 2 lines 51-61:

particular vehicle. The computer includes a logical
clock 34A which causes digital signals representing the
time a vehicle enters the area in the computer memory
along with the digital signals identifying the vehicle,
and which produces digital signals representing the
time the identified vehicle leaves the area when the
aforesaid comparison is made so as to determine the
time in which the vehicle 14 remained in the parking
facility, and to compute the parking fees due based on
predetermined fee rates previously entered into the
computer.

Finally, Mehdipour discloses:

Certain of the cars parked in the parking area may
be identified by computer 34 as monthly parkers,
and when such a vehicle arrives at the exit 18, the
computer 34 provides an output control to exit
gate 20 automatically to open the exit gate. The
computer 34 accumulates the parking fees due for
the particular vehicles, and may be controlled on
a daily, weekly, monthly, or other periodic basis
to operate a printer 36, so that monthly statements
may be prepared and sent to the owners of the
particular vehicles. Col. 3; ll. 14-23.

Exhibit 4
Page 13

Application/Control Number: 90/012,882                                    Page 11
Art Unit: 3992

**Hwang** prior art discloses an automatic identification system for a car-plate which comprises a photographing apparatus and an image-processing CPU. The system disclosed in the present invention can be mounted in a car for automatically identifying a car-plate that is under a still or moving condition. The photographing apparatus is used for taking the image of a car-plate, and the image is then transmitted into the image-processing CPU, which accurately extracts the characters of a car-plate using a "Fuzzy inference" technique, and identifies the characters through a character structure analysis neural network.



FIG. 1

With the automatic identification system of the present invention, an incorrect identification can be avoided in the event the image of a car-plate is blurred, and the characters is deformed or smeared (Abstract).

**Shyu** discloses an apparatus and method for automatically recognizing the characters on a license plate which is fixed on a vehicle. A sensor/controller device is utilized to detect whether the vehicle has reached a predetermined position for image sampling, and to release a trigger signal when the vehicle has reached the predetermined position. An image processing unit is coupled to the sensor/controller device to receive the trigger signal and then to send an image-

Exhibit 4
Page14

Application/Control Number: 90/012,882                                    Page 12
Art Unit: 3992

sampling instruction to an image-sampling device.  The image-sampling device is

coupled to the image processing unit, and samples a vehicle image including the

image of the license plate in response to the image-sampling instruction.  The

vehicle image is converted into an electric signal by the image-sampling device,

which in turn is sent back to the image processing unit. The image processing

unit digitizes the electric signal, and process the digitized electric signal to

estimate the position of the license plate, to determine the bounding edges of the

characters on the license plate, to separate each character on the license plate,

and to recognize each separated character.

   Shyu further discloses in columns 3-4 lines 66-9:

> are all preferably an ultraviolet sensor pair. The image-
> sampling box 23 is preferably a solid-state camera. The
> light sources 21 and 22 may be an infrared ray source.
> To avoid being affected by climate, dust, temperature,
> vibrations and other natural conditions, referring to
> FIG. 4, the image-sampling box 23 includes a box-like
> body 231, a protective cover 230 covering the upper
> portion of the box-like body 231; a camera 234 fastened
> within the box-like body 231, and a filter 232 mounted
> on the box-like body 231 and in front of the lens of the
> camera 234. The image-sampling box 23 may also in-
> clude a compressed air source 236 to clear the front
> surface of the filter 232, as shown in FIG. 4 by way of
> a plurality of currents of air via a plurality of tubes 238
> and nozzles 233.

   <u>Boyette</u> discloses, for example, FIG. 1 illustrating a bank lobby in which a

teller 62 is serving a customer 64.  Several other customers are waiting in a

queue 50 to be served.  The bank includes an information gathering system

Exhibit 4
Page15

Application/Control Number: 90/012,882                                    Page 13
Art Unit: 3992

which gathers data on the performance of the tellers and the volume of business

transactions using video cameras 102 and 104.



FIG. I

Boyette discloses in column 5, lines 45-50:

The cameras 102, 104 and 302 used in this embodiment of the invention are standard monochrome video cameras. It is contemplated, however, that color video cameras, infra-red cameras or other types of imaging sensors may be used for one or more of the cameras 102, 103 and 302.

Boyette discloses:

The iconic matcher operates interactively with the feature analyzer (FIG. 6). Specifically, the steps 702-705 are executed between the steps 611 and 612 of the feature analyzer. In step 612, the feature analyzer reads the match value R sent by iconic matcher, step 705. In step 614, the value of R received from the iconic matcher is compared against a threshold. Col. 7, ll. 13-19.

Boyette further discloses in column 3 lines 37-47:

Exhibit 4
Page16

Application/Control Number: 90/012,882                          Page 14
Art Unit: 3992

Each of the sub-areas are defined when the bank is
empty. In the exemplary embodiment of the invention
described below, the computer 110 is operated in a
set-up mode to prompt the user to outline each sub-area,
for example, by using a point light source. By analyzing
the images captured in response to these prompts, the
computer 110 defines rectangular arrays of pixel data
which correspond to each sub-area. As a last step in the
initialization process, the computer 110 extracts refer-
ence data for each sub-area, from images captured when
the bank is empty.

### Substanial New Question of Patentibility of Claim 6:

Claim 6 includes limitations of claim 2, from which claim 6 depends. Claim

6 further includes the limitations of claim 51, from which claim 2 depends. As

mentioned earlier, during the prior reexamination 90/011,233, on 6/22/2012 a

NIRC was issued wherein Examiner stated in pages 5-6 of the NIRC:



Regarding independent claims 51 and 52, each recites, *inter alia*, the uniquely

distinct features: "a movably mounted digital camera 12 adapted for receiving images of

a space 14 to be monitored for directly outputting digital image data" and "the interpreter

16 and comparator 22 cooperate to select recognizable portions of image data among

unrecognized portions of image data in the space being monitored 14; the selected image

portions being compared to the image data in the reference memory 20", see *id.*, the '699

patent Figure 1;

Therefore, in regards to claim 6, Netravali, Hwang, Mehdipour and Boyette

in view of Shyu prior art appear to be pertinent to the limitations of claim 51 which

states ... *a movably mounted digital camera adapted for receiving images of a*

*space to be monitored for directly outputting digital image data...the interpreter*

*and comparator cooperate to select recognizable portions of image data among*

Exhibit 4
Page17

Application/Control Number: 90/012,882                                    Page 15
Art Unit: 3992

*unrecognized portions of image data in the space being monitored, the selected*
*image portions being compared to the image data in the reference memory.*
<u>Specifically, in regards to camera being a "digital" camera producing "digital"</u>
<u>image, Shyu prior art appears to be pertinent.</u>

   Therefore, Netravali, Hwang, Mehdipour and Boyette in view of Shyu
prior art technical teachings appear to be pertinent to allowability reasons
of claim 51 and limitations of 2 and 6. Although, other than Shyu prior art,
these technical teachings provided by the Patent Owner were made
available to, and was reviewed by the Examiner during the previous
reexamination of the '669 patent, however, Requester has presented cited
prior art in a new light or a different way that escaped review during earlier
reexamination. Therefore, the cited prior art does raise a SNQ over at least
claim 6 of the instant '669 Patent.

   <u>**Substanial New Question of Patentibility of Claim 30**</u>
   In regards to claim 30, Netravali, Hwang, Mehdipour and Boyette in view
of Shyu prior art appears to be pertinent to the allowability limitations of claim 30
which stated ... ...*a movably mounted camera adapted for receiving images of a*
*space to be monitored by detecting RADAR, thermal, or infrared images or for*
*detecting images through an opaque material.* <u>Specifically, in regards to camera</u>
<u>being a "infra-red" camera, Boyette prior art appears to be pertinent.</u>

Exhibit 4
Page18

Application/Control Number: 90/012,882                                    Page 16
Art Unit: 3992

Therefore, Netravali, Hwang, Mehdipour and Boyette in view of Shyu
prior art technical teachings appear to be pertinent to allowability reasons
of claim 30. Although, other than Shyu prior art, these technical teachings
provided by the Patent Owner were made available to, and was reviewed by
the Examiner during the previous reexamination of the '669 patent,
however, Requester has presented cited prior art in a new light or a
different way that escaped review during earlier reexamination. Therefore,
the cited prior art does raise a SNQ over at least claim 30 of the instant '669
Patent. It is for the same reasons the cited prior art does raise a SNQ over
at least dependent claims 31-32, 35-39 and 41-42 of the instant '669 Patent

### Scope of Reexamination

20.       A substantial new question of patentability affecting claims 6, 30-32, 35-39
and 41-42 of United States Patent Number 5,831,669 is raised by the request for
*ex parte* reexamination.

### Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these
proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"
and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305
requires that *ex parte* reexamination proceedings "will be conducted with special
dispatch" (37 CFR 1.550(a)).  Extensions of time in *ex parte* reexamination
proceedings are provided for in 37 CFR 1.550(c).

Exhibit 4
Page19

### Conclusion

21.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 5,831,669 throughout the course of this reexamination proceeding.  The Requestor is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

22.    All correspondence relating to this *ex parte* reexamination proceeding should be directed:

By EFS:    registered users may submit via the electronic filing system EFS-Web, at https://efs.uspto.gov/efile/myportal/efs-registered

By Mail to:    Mail Stop Ex Parte Reexam

Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By FAX to:    (571) 273-9900
Central Reexamination Unit

By hand:    Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is

Exhibit 4
Page20

Application/Control Number: 90/012,882                              Page 18
Art Unit: 3992

transmitted via the Office's electronic filing system in accordance with 37 CFR

1.6(a)(4), and (b) includes a certificate of transmission for each piece of

correspondence stating the data of transmission, which is prior to the expiration

of the set period of time in the Office action.


Any inquiry by the patent owner concerning this communication or earlier

communications from the Legal Advisor or Examiner, or as to the status of this

proceeding, should be directed to the Central Reexamination Unit at telephone

number (571) 272-7705.


    /Salman Ahmed/

Salman Ahmed
Primary Examiner
Central Reexamination Unit - Art Unit 3992
(571) 272-8307


Conferees:

/James Menefee/
Primary Examiner, Art Unit 3992

/Daniel J Ryman/
Supervisory Patent Examiner, Art Unit 3992

Exhibit 4
Page21

Doc Code: IDS
Document Description:  Information Disclosure Statement filed

PTO/SB/42 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U. S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| 37 CFR 1.501 **INFORMATION DISCLOSURE CITATION IN A PATENT** (Sheet _1___ of _2___) | Docket Number (Optional) 90/01 1882 | | Patent Number 5,831,669 |
|---|---|---|---|
| | Applicant | | |
| | Issue Date | | Art Unit 3992 |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | 4,603,390 | 1986 | Mehdipour | | | 1984-03-05 |
| | 4,611,347 | 1986 | Netravali | | | 1984-09-24 |
| | 4,878,248 | 1989 | Shyu | | | 1988-04-20 |
| | 5,097,328 | 1992 | Boyette | | | 1990-10-16 |
| | 5,425,108 | 1995 | Hwang | | | 1993-09-22 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | | |
| | | |
| | | |

| EXAMINER   /Salman Ahmed/ | DATE CONSIDERED   06/13/2013 |
|---|---|

This collection of information is required by 37 CFR 1.501. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentially is governed by 36 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

Exhibit 4
Page22

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

Exhibit 4
Page23

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| JOHN B. ADRAIN, | Case No. 2:10-cv-173 |
| Plaintiff, | |
| v. | DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181) |
| VIGILANT VIDEO, INC.; and THE CITY OF PORT ARTHUR, TEXAS, | |
| Defendants. | |

## DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)

On May 13, 2013 the Court issued a Memorandum Opinion and Order (Dkt No. 181) regarding two separate motions filed by the Parties in this action: Plaintiff's Motion for Leave to Amend Disclosure of Asserted Claims and Infringement Contentions (Dkt. No. 121) (hereinafter "Motion to Amend") and Defendants Joint Motion for Summary Judgment (Dkt. No. 126) (hereinafter "Motion for Summary Judgment").  For the reasons set forth below, the defendants move the Court for Reconsideration of the Court's May 13, 2013 Memorandum Opinion and Order as to both Motions.

**A.    Factual and Procedural Background Relevant to this Motion for Reconsideration**

On July 26, 2012, pursuant to this Court's Order regarding Summary Judgment Motions, defendants sought permission from the Court to file a Motion for Summary Judgment in this case regarding issues pertaining to "image data" as construed by the Court's July 5, 2012 Markman

**Page 1 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 1

Memorandum Opinion and Order. *See Dkt. No. 115.* Thereafter, Defendants, again pursuant to

this Court's Order regarding Summary Judgment Motions, sought permission from the Court to

file a Motion for Summary Judgment, amending their earlier letter and adding issues to include,

but not be limited to, arguments pertaining to digital v. analog issues and non-infringement,

citing in part the August 21, 2012 re-examination of the '669 Patent-in-Suit. *See Dkt. No. 118.*

The Court granted defendants leave to file a Motion for Summary Judgment on these issues, on

October 10, 2012. *See Dkt. No. 120.* On October 17, 2012 plaintiff filed his Motion to Amend

with the Court. *See Dkt. No. 121.*[1]  On November 30, 2012, Defendants filed their Motion for

Summary Judgment. *See Dkt. No. 126.*

All briefs regarding the Motion to Amend, including Defendants' Response in Opposition

(*Dkt No. 125*), Plaintiff's Reply (*Dkt. No. 127*), and Defendants' Sur-Reply (*Dkt. No. 129*), were

filed with the Court by December 17, 2012. All briefs regarding the Motion for Summary

Judgment, including Plaintiff's Response in Opposition (*Dkt No. 132*), Defendants' Reply (*Dkt*

*No. 138*), and Plaintiff's Sur-Reply (*Dkt. No. 145*), were filed with the Court by February 18,

2013.[2]

---

[1]Although Plaintiff moved to Amend his Disclosure of Asserted Claims and Infringement
Contentions in this matter, he has not moved to Amend his Complaint in this case (*Dkt. No. 1*),
which incorporates by reference in the Complaint, the Original '669 Adrain Patent. (*See Dkt. No.*
*1-1*).  *See Defendants Motion to Dismiss, Dkt. No. 200.*

[2]Defendants note that pursuant to the Docket Control Order (*Dkt No. 49*), discovery in
this case closed on January 31, 2013.  Further, the plaintiff and defendants were required to
identify trial witnesses pursuant to the Docket Control Order on March 15, 2012 (plaintiff) and
March 22, 2013 (defendants), dispositive motion and *Daubert* motion deadlines were set for
April 30, 2013, filing of Motions in Limine were due on May 13, 2013 (which was amended by
Order of the Court to May 15, 2013, *Dkt. No. 161*, which amended the Docket Control Order
requiring pre-trial disclosures on May 3, 2013, and service of objections to pre-trial disclosures

**Page 2 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 2

As noted in Footnote 2, the Pre-Trial Conference in this matter was set for May 20, 2013 and Jury Selection was set for June 3, 2013. (*Dkt. No. 49*).  However on April 24, 2013, the Court, *sua sponte*, reset Jury Selection to commence in this matter on June 7, 2013. *(Dkt. No. 162)*.  Thereafter, the Court, again *sua sponte*, and without an issued Order, reset the Pre-Trial Conference date in this matter to July 16, 2013 and commencement of Jury Selection in this matter to August 5, 2013.[3]  Approximately 3 ½ hours later, the Court issued the Court's Memorandum and Opinion (*Dkt. No. 181*) which is the subject of this Motion to Reconsider.

**B.    Standards for Motions for Reconsideration**

Although the Federal Rules of Civil Procedure do not explicitly discuss Motions for Reconsideration, such Motions are allowable under Federal Rules of Civil Procedure 54, 59, and/or 60.  *See e.g., U.S. v. Renda*, 709 F3d 472, 479 (Fifth Cir. 2013) (a motion for reconsideration made pursuant to FRCP 54(b) of an interlocutory order is reviewable under the abuse of discretion standard.) *See also, Katyle v. Penn Nat'l Gaming, Inc.*, 637 F3d 462, n. 4 (4th Cir. 2011).  Further, a motion for reconsideration for an interlocutory order (such as a denial of a motion to dismiss or for summary judgment) is not considered a motion under FRCP 59(e), but should simply be considered a request for the Court to revisit its earlier ruling.  *See e.g., Jones v. Bernanke*, 557 F3d 670, 677-78 (DC Cir. 2009).  Notwithstanding this distinction between FRCP 54(b) and FRCP 59(e), a party moving for reconsideration "ordinarily must show '(1) an

---

on May 8, 2013), the Pre-Trial Conference in this case to take place on May 20, 2013 and jury selection to commence on June 3, 2013.

[3] Defendants note that the Court's May 13, 2013 "Notice of Hearing" which re-set the Pre-Trial Conference and Jury Selection dates, was issued at 11:09am CST by the Court.

**Page 3 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 3

intervening change in controlling law; (2) the availability of new evidence not previously

available; or (3) the need to correct a clear error of law or prevent manifest injustice.'" *eTool*

*Development, Inc., et al v. National Semiconductor Corp.*, 881 FSupp2d 745, 750 (*quoting*

*Jacoby v. Trek Bicycle Corp.* 2011 WL 3240445 at 1 (E.D. Tex. July 28, 2011).

Defendants argue that the Court's Memorandum Opinion and Order of May 13, 2013

(Dkt. No. 181) should be reconsidered by the Court in order to correct clear errors of law and/or

to prevent manifest injustice upon defendants in this matter as set forth in more detail below.

**C.    The May 13, 2013 Memorandum Opinion and Order**

The Court's May 13, 2013 Memorandum Opinion and Order (hereinafter referred to as

the "Court's Order") ruled upon two separate Motions by the parties in this case: Defendants'

Motion for Summary Judgment and Plaintiff's Motion to Amend. *Court's Order, p. 1.*

Defendants first point out that the Court's Order lacks sufficient basis upon which to

grant the Motion to Amend in this matter. As noted earlier, the original Complaint in this case,

*Dkt. No. 1*, has not been amended in this matter to include the Re-Examined '669 Patent, and

therefore the Court's Order allowing the Plaintiff to add claims 30-32, 35-39, and 41-42 in this

case is unsupported by the actual claims of infringement against defendants in this matter.

Because the Complaint itself incorporates by reference and relies upon the original, unre-

examined patent as a basis of his complaint against the defendants, his assertion of the new

claims is unsupportable because they are not asserted in the case in chief against the defendants.

Thus, the Court should reconsider and deny the plaintiff's motion to amend, adding these claims

in the case, as clear error exists in the record. *See Defendants Motion to Dismiss, Dkt. No. 200.*

Although Section II is titled "Analysis" in the Court's Order, the Court only analyzed and

**Page 4 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 4

discussed in this section Plaintiff's Motion to Amend. *See Court's Order, pp. 2-4.* As the Court

noted, Local Patent Rule 3-6(b) allows a party to supplement its Infringement Contentions "only

by order of the Court, which shall be entered only upon a showing of good case." Thereafter the

Court set forth the four factor test of *Arbitron, Inc. v. Int'l Demographics, Inc.,* 2009 WL 166555

at 1 (E.D. Tex. 2009) which states:

> "While a Court has broad discretion to grant untimely motions to amend
> pleadings, it should consider four factors in ruling on such motions: (1) the
> explanation for the failure to meet the deadline; (2) the importance of the thing
> that would be excluded; (3) potential prejudice in allowing the thing that would be
> excluded; and (4) the availability of a continuance to cure such prejudice. *S&W
> Enters., LLC v. Southtrust Bank of Ala. NA,* 315 F3d 533, 535 (5th Cir. 2003)."
> *Arbitron, supra.*

1.    No Satisfactory Explanation for the Delay was proffered by the Plaintiff

In applying the *Arbitron* factor no. 1, the Court held that the two-month delay between

the August 21, 2012 Reexamination Certificate of the '669 Patent and the Plaintiff's filing of the

Motion to Amend was not an unreasonable delay, essentially adopting the argument by plaintiff

that the delay by plaintiff of two (2) months was excusable. *See Court's Order, p. 3.* At the

outset, it is the burden of the plaintiff in this context to establish diligence, rather than the

opponent to establish lack of diligence, regarding the sought after amendment. *See O2 Micro

Int't Ltd., et al v. Monolithic Power Systems, Inc.,* 467 F3d 1355, 1367 (5th Cir. 2006). With all

due respect to the Court, defendants believe that the Court erred in finding that the Plaintiff was

diligent. The factual circumstances of this matter are somewhat analogous to the *S&W Enters*

case cited by the *Arbitron* Court *supra.* In *S&W Enters,* the Court held that plaintiff's motion to

amend three months after the deadline for amendment of pleadings and six months after a Texas

Supreme Court decision, *Wal-Mart Stores, Inc. v. Sturges,* 52 SW 711 (Tex. 2000) (which

**Page 5 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 5

clarified the claim for tortious interference with prospective business advantage), was untimely and not a reasonable explanation for the delay. *S&W Enters, supra at 535-536.* The court held that the amendment sought by the plaintiff would add a new cause of action, and came after the plaintiff had taken depositions in the case. *Id.* On appeal, the Fifth Circuit upheld the District Court's ruling, noting that of the four factors (set forth in *Arbitron supra*), three of the four factors weighed against the plaintiff, including that allowing the amendment as sought would require the defendant "to conduct additional discovery." *Id, at 537-538. See also O2 Micro Int't Ltd., supra* at 1367 (where the Court upheld the District Court's finding that the plaintiff's three month delay in seeking to amend its contentions of infringement after learning of the alleged infringement was not diligent or timely).

In this matter, although the Certificate of Reexamination of the '669 Patent was issued on August 21, 2012, the plaintiff had notice of the results of the Re-Exam by as early as May 22, 2012 (*see Exhibit 1; Declaration of Roy Thompson*) and certainly by June 22, 2012 (*see Exhibit 2; Declaration of Roy Thompson*). Both Exhibits 1 and 2, which are excerpts from the File Wrapper of the '669 Patent Re-Examination in the USPTO, indicate that the original Claims (save Claim 6) of the Claims asserted against the defendants were amended and/or cancelled, and that the new claims of 30-32, 35-39, and 41-42 would be patentable.

The Court should reconsider the Order and find that plaintiff did not act diligently in this regards.

2.   The importance of the thing that would be excluded

As to this factor, the Court relied upon Plaintiff's argument that the newly added claims are important in this case because they do not require a digital camera limitation. *See Court's*

**Page 6 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 6

*Order, p. 3.* The Court noted the original claims sought against the defendants did not have a digital camera limitation as well, but they had either been amended to rely upon a digital camera limitation under Claim 51, or cancelled, such as Claim 1, in the re-exam. Because the Court construed the main basis of the Defendants' arguments in the Summary Judgment Motion to be based upon the digital camera limitation of Claim 51, it determined the second factor weighed in favor of granting leave to amend. *Id.* Defendants respectively assert that this reasoning is flawed and arbitrary. Although the Court relies in part upon the presence of the digital camera/Claim 51 argument in defendants' Summary Judgment Motion to determine that the importance of the new claims should be allowed, the very case law cited by the Court, the *Arbitron* decision, would suggest otherwise. In *Arbitron,* the Court held that as to the new infringement contentions sought by the plaintiff, which revolved around the discovery of communications of the defendant regarding a proposed sale and/or bid to supply a product, the communications themselves were "of sufficient importance to finding a possible infringing sale under sec. 271(a) as to allow an amendment at this time." *Id, at 2.* However, that situation does not exist in this case. This is not a discovery of possibly new claim under an existing patent (as in *Arbitron*), but a fundamentally different series of Claims of a re-examined Patent asserted in this case.

Effectively, the Court granted the amendment in this case simply to allow the Plaintiff to continue with the prosecution of his claim, after the re-examination of the '669 Patent had fundamentally destroyed the majority of the claims asserted by the plaintiff against the defendants. By using defendants' arguments in the Summary Judgment Motion, (which argued for a digital camera limitation under Claim 51 as applying to Claim 6; which was rejected by the Court in Footnote 1 of the Court's Order), the Court placed defendants in an unfair and arbitrary

**Page 7 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 7

dilemma in which they were "damned if they do and damned if they don't."   For these reasons, the Court should reconsider the Court's Order on this point and reverse its decision.

      3.    <u>The potential prejudice in allowing the thing that would be excluded</u>

      The Court held that any potential prejudice to the defendants would be *"de minimis at best"* and found this factor to weigh in favor of the plaintiff. *See Court's Order, pp. 3-4.*

      Respectively, the Defendants take strong issue with this position by the Court and finds it noteworthy that the discussion regarding prejudice only takes up two paragraphs in the Court's Order, despite the fact that the motion itself had been pending before the Court since October 17, 2012 (and fully briefed by the parties by December 17, 2012).  Between December 17, 2012 to May 13, 2013, the following deadlines set forth in the Docket Control Order (*Dkt. No. 49*) passed:

- Discovery Deadline (1/31/2013);

- Identification of Trial Witnesses (3/15/2013 and 3/22/2013);

- Deadline for filing of Dispositive Motions and any other motion that may require a hearing (including *Daubert* Motions) (4/3/2013); and

- Response to Dispositive Motions and Daubert Motions (4/30/2013).

      Further, both parties filed a Joint Agreed Motion to Modify the Docket Control Order (*Dkt. No. 160*), which was granted by the Court on 4/23/2013 (*Dkt. No. 161*) which set forth the following dates:

- Service of Pre-Trial Disclosures (including Trial Exhibits, etc.) on 5/3/2013;

- Deadline for Service of Objections to Pre-Trial Disclosures on 5/8/2013; and

- Filing of Motions in Limine on 5/15/2013.

**Page 8 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 8

In addition, the parties also fully briefed the Court as to Defendants' Summary Judgment

Motion by February 18, 2013, the plaintiff filed Motions to Strike the Expert Reports of

Defendants Experts, and Defendants moved the Court to allow the submission of Supplemental

Reports of Defendants' Experts. *See Dkt. Nos. 155, 156, and 158.*

During this period of time, the Court did not rule on the Motion to Amend nor the

Summary Judgment Motion, all while the defendants (and plaintiff) continued to prepare for a

trial in this matter, including pre-trial submissions and trial exhibit preparation.  Attached is the

Declaration of Roy Thompson, paragraph 4, which avers that in his opinion, the thousands of

dollars of expenses (including attorney fees and staff time) incurred by the defendants in the trial

preparation alone in order to comply with the Court's original schedule set forth above is

essentially for naught, as the defendants will now be forced to amend the Verdict Form, the Jury

Instructions, the Pre-Trial Order, the Trial Exhibits, the Motions in Limine and the Expert

Reports to reflect the Court's Order in this matter.

It is also clear that the Court's Standing Order, requiring a letter brief to the Court seeking

permission to file a Summary Judgment Motion in any case before the Court has acted unfairly

and prejudicially in this matter.  The Defendants filed the Letter Briefs with the Court on July 26,

2012 (*Dkt. No. 115*) and September 14, 2012 (*Dkt. No. 118*) and the Court granted permission by

Order on October 10, 2012 (*Dkt. No. 120*).  Within a week, the plaintiff filed his Motion to

Amend in this case (*Dkt. No. 121*).  Essentially, the Order requiring the Letter Briefing to the

Court "cued up" the Plaintiff to the issues related directly to the Re-Examination of the '669

Patent and how that Re-Exam affected the claims against the Defendants in this matter.  It was

not until the Defendants had been able to file their Response to the Motion to Amend (*Dkt. No.*

**Page 9 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 9

*125*), were the Defendants able to finally file the Summary Judgment Motion on 11/30/2012

(*Dkt. No. 126*).

Thus, the granting of the Motion to Amend at such a late date in this matter is, despite the

"*de minimis*" finding by the Court, highly prejudicial to the Defendants in this case for the

reasons set forth above.  It is noteworthy in the Court's Order that the Court states that "Vigilant

does not point to a single term in the re-examined claims that would necessitate additional

construction. (Dkt. No. 129 at 4)."  *Court's Order, p. 4.*  Respectfully, this is incorrect.  First, the

Document cited by the Court is the Sur-Reply by Vigilant.  However, in Defendant's Response to

the Motion to Amend (*see Dkt. No. 125 at 6*), the Defendants wrote:

> "All of the claims that Plaintiff proposes via amendment derive from a <u>heretofore
> nonexistent</u> claim (Claim 30), and the new claims – *viz.*, 30-32, 35-39, and 41-42
> – bear no relationship whatsoever to any of the claims that Plaintiff has pursued
> throughout this litigation – *viz.*, 1-3 and 6-10.  Indeed, new **Claim 30 now
> includes brand new terminology that would necessitate a new *Markman*
> process, *viz.*: 'RADAR, thermal, or infrared images or for detecting images
> through an opaque material.'** And Claims 41 and 42 bear altogether new
> language as well." (Underline emphasis in original, Bold emphasis added).

Therefore, the Court and the Plaintiff have been on Notice as early as November 26, 2012

that the Defendants' position on the new terminology above would require *Markman* briefing and

a hearing.  Defendants respectfully request the Court reconsider the Court's finding on this point

and find that the Defendants are severely prejudiced by the Court's Order allowing the

amendment as sought by Plaintiff.

4.    <u>The availability of a continuance to cure any potential prejudice.</u>

On this point, the Court, wrote that it had "moved the June 3, 2013 jury selection date to

August 5, 2013, giving the parties two more months until trial.  Thus, any potential prejudice to

**Page 10 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 10

Defendants would be alleviated by this unrelated extension of time." *Court's Order, p. 4.* First

it should be noted that the Court had previously *sua sponte* moved the June 3, 2013 jury selection

date to June 7, 2013, without any discussion or consultation with the parties.  Thus, the Court

apparently forgot its own activities in this regard while writing this Memorandum Opinion and

Order.  Further, although the Court did move the Jury Selection Date to August 5, 2013, the

Court did not notify nor inquire with the parties whether the new dates chosen by the Court,

approximately 3 ½ hours prior to issuing the Memorandum Opinion and Order, conflicted with

any schedules, including other trials and/or vacation plans of defendants representatives,

witnesses, or counsel.  These dates do in fact cause conflict, and will be subject to a Motion for

Set-Over to be filed separately by Defendants.

More importantly, the Defendants seek the Court's reconsideration, and find that two

additional months is simply not enough time in which to allow defendants to prepare an entirely

new defense against claims that have until May 13, 2013, never been asserted against the

Defendants.  Defendants will require additional discovery, including depositions of Adrain (both

as a fact and expert witness); Defendants will seek a new *Markman* process; Defendants will be

required to respond to the Contentions of Infringement; and Defendants will be required to

rework all Expert Reports, Jury Instructions, Verdict Forms, Motions in Limine, and the Pre-

Trial Order (now by July 2, 2013 by Court Order) to reflect on these new claims.  Two months,

with less than that for preparation of all the above is simply not enough time.

**D.    Defendants' Summary Judgment Motion**

Defendants request the Court to reconsider the findings as to the Motion for Summary

Judgment, related to Defendants' argument that they do not infringe the originally asserted

**Page 11 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 11

claims of the '669 Patent (1-3, 6-10) because the re-exam of the '669 Patent fundamentally

altered the dependency of the claims of '669 to require a digital camera. The Court found that

because the Court granted the Motion to Amend, and held (in Footnote 1) that Claim 6 "still

exists as originally issued, including its dependence from the cancelled claim 1 and the original

claim 2. *See MPEP 2260.01*," that this argument was "moot." *Court's Order, p. 4*. Defendants

seek the Court's reconsideration on this issue and enter an Amended Order that finds as follows:

1. The Motion for Summary Judgment is granted as to Claims 1-3, and 7-10 in favor of Defendants.[4]

Because Plaintiff abandoned his assertion of Claims 1-3 and 7-10 against the Defendants

only after Defendants filed their Motion for Summary Judgment, the effect would be a mandatory

ruling in favor of Defendants on this issue. As FRCP 56(a) clearly states: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and that the movant is entitled to judgment as a matter of law." Here, the Defendants have met

this burden as to Claims 1-3, and 7-10. Simply because Plaintiff sought to Amend the

Contentions of Infringement in this matter did not abrogate the duty of the Plaintiff to meet the

evidence submitted as part of Defendants' Motion for Summary Judgment on the Claims that

were present and alleged against Defendants until the May 13, 2013 Order (when the Court

granted the Motion to Amend). In fact, almost the entirety of Plaintiff's response in the

---

[4] This issue is important and necessary as the Defendants have previously served upon the Plaintiff an Offer of Judgment in this matter. *See Exhibit 3*. It is Defendants' position that the issue was not "moot" as the Court found, because the Motion to Amend did not discuss in any form that Plaintiff intended to withdraw Claims 1-3, 7-10 from the Case. It was only after Defendants had responded to the Motion to Amend and filed their Motion for Summary Judgment did Plaintiff indicate in his Reply Brief in support of the Motion to Amend (*Dkt. No. 127*) that Plaintiff intended to withdraw claims 1-3 and 7-10. *See Sealed Reply, p. 1*.

**Page 12 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 12

Summary Judgment motion is not addressing the arguments as to Claims 1-3 and 7-10, but instead arguing that Court should focus upon the added claims to the re-examined '669 Patent which were the focus of the Motion to Amend. Thus, plaintiff failed to meet its burden on this issue, as required by FRCP 56, and the Court should Amend the Order and grant Defendants' Motion for Summary Judgment at to Claims 1-3 and 7-10 of the Patent which is asserted against the Defendants in this case. *See Dkt. No. 1 and Dkt. No. 1-1.*

   2.   Claim 6 depends upon amended Claim 2 and new Claim 51, and therefore
        Summary Judgment is granted as to Claim 6

Defendants respectively urge the Court to reconsider the Court's finding in Footnote 1, wherein the Court, without any discussion or explanation, states that Claim 6 depends on the "canceled claim 1 and original claim 2," citing only MPEP Section 2260.01. *Court's Order, p. 4, footnote 1.* This is necessary because the court's finding on this point is "clear error." *See eTool Development, supra*, 881 FSupp2d at 750.

As argued in Defendants Reply Brief in Support of the Motion for Summary Judgment, the concept of "argument based estoppel" in this context "prevents a patentee from asserting a larger scope of coverage of the claims than he has disavowed, despite the wording of the claim." *See Dkt. No. 138, p. 14.* As Defendants further noted on this issue, the Plaintiff himself wrote that because of the prior art of *Netravali*, Claim 2 (and others) is patentable because of the dependencies to the new claims of 51 and 52 of the '669 Patent. *Dkt. No. 138, pp. 15-16.* Therefore, and using plaintiff's own arguments to the USPTO, Claim 2 of the '669 Patent is only patentable with a digital camera limitation provided by Claim 51. *Dkt. No. 138, p. 16.* Because Claim 2 requires the digital limitation of Claim 51, that means that Claim 6 requires the digital

**Page 13 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 13

camera limitation as well, which in turns means that Claim 6 is not "otherwise allowable per MPEP Sec. 2260.01 as apparently found by the Court in Footnote 1 of the Court's Order at p. 4.[5]

The Court's cursory finding of Claim 6's dependency in the Court's Order is clear error and should be reconsidered by the Court.

CONCLUSION

For the reasons set forth above, the Court's Memorandum Opinion and Order of May 13, 2013 (Dkt. No. 181) should be reconsidered by the Court in order to correct clear errors of law and/or to prevent manifest injustice upon defendants in this matter.

DATED: May 21, 2013                **THOMPSON & BOGRÁN, P.C.**

                                    s/Roy B. Thompson
                                    _____
                                    Roy B. Thompson, OSB 82501
                                    15938 SW Quarry Rd., Suite B-6
                                    Lake Oswego, OR 97035
                                    Telephone:    503-245-6600
                                    Cellphone:    503-381-9945
                                    Facsimile:    503-244-8399
                                    E-mail:       roythompson@comcast.net
                                    Of Attorneys for Defendants Vigilant Video and
                                    The City of Port Arthur, Texas

---

[5]It goes without saying that based upon plaintiffs own statements to the USPTO as discussed above, because of the prior art of *Netravali*, the cursory finding by the Court of the dependency of Claim 6 to the original Claim 2 and the cancelled Claim 1, does not save the day for the Plaintiff. Because the Plaintiff has admitted to the USPTO that *Netravali* is prior art and is the basis for the cancellation of Claim 1 of the original patent, Claim 6 must be invalid as well.

**Page 14 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 14

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)** on the following:

<u>All Counsel Signed up for Electronic Notifications</u>

electronically via the Court's CM/ECF system.


DATED: May 21, 2013                    **THOMPSON BOGRÁN, P.C.**

   /s/ Roy B. Thompson
Roy B. Thompson**,** OSB 82501 (*pro hac vice*)
15938 Quarry Road, Suite B-6
Lake Oswego, OR 97035
Telephone:    503-245-6600
Cellphone:    503-381-9945
Facsimile:    503-244-8399
**E-mail:      roythompson@comcast.net**
Attorney for Defendant Vigilant Video Inc.


**Page 15 - DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MAY 13, 2013 MEMORANDUM OPINION AND ORDER (Dkt. No. 181)**

Exhibit 5
Page 15

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

JOHN B. ADRAIN,                          §
                                         §
          Plaintiff,                     §          CASE NO. 2:10-cv-173-JRG
                                         §
v.                                       §
                                         §
VIGILANT VIDEO, INC. and THE CITY        §
OF PORT ARTHUR, TEXAS,                   §
                                         §
          Defendants.                    §

<u>**ORDER ON MOTIONS AND AMENDMENT TO THE DOCKET**</u>

Before the Court on July 3, 2013 came on to be heard the following: Defendants' Motion To Reconsider Claim Construction Order (Dkt. No. 170), Defendants' Motion to Reconsider Court's May 13, 2012 Order (Dkt. No. 202), Defendants' Motion to Dismiss All Claims Except For Claim 6 (Dkt. No. 200), Defendants' Emergency Motion For New Trial Date and New Scheduling Order (Dkt. No. 203), Defendants' Motion to Stay Pending Outcome of Second Reexam (Dkt. No. 223), and Defendants' Motion for Leave to File a Supplementary Brief re Dkt. Nos. 202 and 203 Re USPTO's Office Action Concerning the Second Reexam (Dkt. No. 228). The Court heard argument on each of these motions during a hearing held on July 3, 2013 and then announced its rulings and reasoning into the record. Such rulings are memorialized herein. Any clarification and/or modification to such motions, as stated by the Court during such hearing, fully applies to the rulings as stated below, and such rulings do not exclude any clarification and/or modification as stated in the record.

Defendants' Motion To Reconsider Claim Construction Order (Dkt. No. 170) is **DENIED**,

1

Exhibit 6
Page 1

pursuant to the Court's reasoning as fully set forth in the record. Defendants did not seek to construe the claim term "image" during the time allotted for claim construction and the scheduled *Markman* hearing. (*See* Docket Control Order, Dkt. No. 140.) Accordingly, the Court finds it inappropriate to construe a term at this date that was known to the parties since the Complaint was filed.

Defendants' Motion to Reconsider Court's May 13, 2012 Order (Dkt. No. 202) is **DENIED**, pursuant to the Court's reasoning as fully set forth in the record.

Defendants' Motion to Dismiss All Claims Except For Claim 6 (Dkt. No. 200) is **DENIED**, pursuant to the Court's reasoning as fully set forth in the record. However, out of an abundance of caution, the Court hereby grants leave for Plaintiff to amend its Complaint by attaching the reexamination certification.

Defendants' Emergency Motion For New Trial Date and New Scheduling Order (Dkt. No. 203) is **DENIED**, pursuant to the Court's reasoning as fully set forth in the record.

Defendants' Motion to Stay Pending Outcome of Second Reexam (Dkt. No. 223), is **DENIED**, pursuant to the Court's reasoning as fully set forth in the record.

Defendants' Motion for Leave to File a Supplementary Brief re Dkt. Nos. 202 and 203 Re USPTO's Office Action Concerning the Second Reexam (Dkt. No. 228) is **DENIED**, pursuant to the Court's reasoning as fully set forth in the record. The Court understands that Defendants seek to use the June 26, 2013 Office Action from the USPTO as part of the evidence in this case. However, the direction of such communications between the USPTO and the Applicant is subject to almost certainly change, and an isolated Office Action does not, by definition, represent the complete reexamination record. Accordingly, the Court finds the isolated June 26, 2013 Office

Exhibit 6
Page 2

Action to be unreliable and not properly before the Court as evidence. Only after the reexamination proceedings conclude and a final certificate issues is such appropriate for the Defendants to offer as evidence. That said, the Court does not herein attempt to rule on the admissibility of the same, but merely clarifies that until a final certificate issues from the USPTO, there is no proper use of the June 26, 2013 Office Action in this case.

The Court views very seriously the Defendants' clearly established and ongoing unwillingness to meaningfully comply with this Court's meet and confer requirements as imposed by the Local Rules. The Court also views with equal disfavor the Defendants' repetitive motion practice. Such continues to tax the Court's time and limited resources without justification.

As previously stated in this and other cases, this is not the first time that Defendant Vigilant Video, Inc. and their counsel have appeared to experience unjustified difficulty in complying with the local rules of this Court. (*See* Dkt. No. 153, and *Edward D. Ioli Trust v. Vigilant*, 2:10-CV-605, Dkt. No. 279.) The Court has twice warned counsel that continuing such a course of conduct will ultimately force the Court to impose sanctions. The Court has previously made it abundantly clear to Vigilant Video, Inc. and its counsel that a continuation of such conduct, in the face of clearly written local rules, will not be permitted. (*Id.*) Nonetheless, Vigilant Video, Inc. and their counsel persist in this course of action. Accordingly, the Court feels compelled to enter the following **ORDERS:**

A.     The Court's standing order on letter briefs shall apply to Defendants (only), and Defendants hereafter must seek and obtain permission in advance of filing future motions. Such letter briefs, requesting leave to file any motion, shall be limited to a one page letter brief per motion.

B.     Counsel for the parties must meet and confer in person in Marshall, Texas, before any future motions are filed. Other attempts to meet and confer shall be deemed inadequate to meet the meet and confer obligations under the Court's local rules.

3

Exhibit 6
Page 3

C.      Roy B. Thompson has not filed an application to appear *pro hac vice* before this Court in this case. Accordingly, Mr. Thompson is directed to cure such defect within seven (7) days.  Failure to do so shall bar Mr. Thompson's future participation in this case.

D.      Defendants must retain experienced local counsel who is familiar with the local rules of this Court. Such local counsel is to make an appearance in this case before the date of the pretrial conference, pursuant to the amended docket set forth below.

Additionally, in light of the USPTO's reexamination certificate issued on August 21, 2012, limited discovery is reopened, pursuant to the amended docket set forth below. Such discovery is limited to reexamined claims 30-32, 35-39, and 41-42 that were added pursuant to the May 13, 2013 Court Order (Dkt. No. 181). Reopened discovery shall be confined to this specific area and scope.

The parties are directed to meet and confer in person in Marshall, Texas, to agree on proposed constructions for additional claim terms that need to be construed. If agreement cannot be reached, the Court will accept Supplemental Claim Construction briefs from each side setting forth their argument on each term, pursuant to the amended docket set forth below. Defendants have had their opportunity to argue the originally asserted claims from the '669 patent, as issued, before the first reexamination, at the *Markman* hearing held on April 11, 2012. Accordingly, the Supplemental Claim Construction briefing shall only pertain to the limitations added to Claim 30 as a result of the reexamination.

The following amendment to the Docket Control Order shall be in effect through the remainder of this case or until further order of this Court. The following deadlines will not be changed except upon a showing of good cause. Good cause is deemed not to have been shown

Exhibit 6
Page 4

merely by an indication that the parties agree that the deadline should be changed.

| September 3, 2013 | Jury Selection – 9:00 a.m. in **Marshall, Texas** <br><br> The Court has reserved the week of September 9, 2013 for trial |
| August 26, 2013 | Pretrial Conference – 9:00 a.m. in **Marshall, Texas** |
| August 19, 2013 | File Joint Pretrial Order, Proposed Jury Instructions, Proposed Verdict Form, and Responses to Motions *in Limine* |
| August 19, 2013 | File Notice of Request for Daily Transcript or Real Time Reporting. <br><br> If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Shelly Holmes, at shellyholmes@skynetcountry.com. |
| August 12, 2013 | File Motions *in Limine* <br><br> The parties shall limit their motions *in limine* to issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury. |
| August 12, 2013 | Serve Objections to Rebuttal Pretrial Disclosures |
| August 7, 2013 | Serve Objections to Pretrial Disclosures; and Serve Rebuttal Pretrial Disclosures |
| August 2, 2013 | Serve Pretrial Disclosures (Witness List, Deposition Designations, and Exhibit List) by the Party with the Burden of Proof |
| August 2, 2013 | File Dispositive Motions or Motions to Strike Expert Testimony (including *Daubert* Motions) <br><br> No dispositive motion or motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court. |
| August 2, 2013 | Deadline to Complete Limited Fact and Expert Discovery <br><br> Such discovery is limited to reexamined claims 30-32, 35-39, and 41-42 that were added pursuant to the May 13, 2013 Court Order (Dkt. No. 181). |

Exhibit 6
Page 5

| August 2, 2013 | Serve Supplemental Disclosures for Rebuttal Expert Witnesses |
| July 24, 2013 | Serve Supplemental Disclosures for Expert Witnesses |
| July 17, 2013 | Deadline to serve Supplemental Invalidity Contentions |
| July 17, 2013 | Each side to file competing Supplemental Claim Construction briefs setting forth their argument. Each brief shall not exceed 15 pages. |

The parties are further **ORDERED** to mediate this case in good faith with Hon. Diane DeVasto, the Court appointed mediator. The Court designates Plaintiff's counsel to be responsible for timely contacting the mediator and Defendants' counsel to coordinate a date for the mediation. Mediation shall be completed prior to August 26, 2012.

Mediation shall be governed by the Court-Annexed Mediation Plan, Appendix H to the Local Court Rules for the Eastern District of Texas. In particular, the Mediation Plan requires the presence at the mediation conference of all parties, corporate representatives, and any other required claims professionals (e.g., insurance adjusters, etc.) with full authority to negotiate a settlement. Any non-individual party representative attending such mediation shall possess sufficient authority and control to unilaterally make binding decisions for the party adequate to address any good faith offer or counteroffer of settlement that might reasonably be expected to arise during such mediation.  Failure to do so by either party shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So ORDERED and SIGNED this 3rd day of July, 2013.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

Exhibit 6
Page 6

# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| JOHN B. ADRAIN, | **Case No. 2:10-cv-173** |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF COMPLIANCE WITH THE COURT'S ORDER REGARDING SUMMARY JUDGMENT MOTIONS** |
| VIGILANT VIDEO, INC.; and THE CITY OF PORT ARTHUR, TEXAS, | |
| Defendants. | |

In compliance with the Court's Order Regarding Summary Judgment Motions,

Defendants jointly file this Notice for their Letter to the Court requesting permission to file a

Motion for Summary Judgment concerning those issues set forth in the June 28, 2013 letter to the

Court, attached hereto as Exhibit A.

DATED: June 28, 2013

THOMPSON ✦ BOGRÁN, P.C.

   /s/ Roy B. Thompson
Roy B. Thompson, OSB 82501 *pro hac vice*
15938 Quarry Road, Suite B-6
Lake Oswego, OR 97035
Telephone:   503-245-6600
Facsimile:   503-244-8399
E-mail:      roythompson@comcast.net

Of Attorneys for Defendants Vigilant Video and
The City of Port Arthur, Texas

**Page 1 - DEFENDANTS' NOTICE OF COMPLIANCE WITH THE COURT'S ORDER REGARDING SUMMARY JUDGMENT MOTIONS**

Exhibit 7
Page 1

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' NOTICE OF COMPLIANCE WITH THE COURT'S ORDER REGARDING SUMMARY JUDGMENT MOTIONS** on the following:

C. Dale Quisenberry          dquisenberry@pqelaw.com
John T. Polasek              tpolasek@pqelaw.com
Jeffrey Scott David          jdavid@pqelaw.com

**POLASEK QUISENBERRY & ERRINGTON, LLP**
6750 West Loop South, Suite 920
Bellaire TX  77401
Telephone:     832-778-6000
Facsimile:     832-778-6010
          Of Attorneys for Plaintiff

electronically via email

DATED: June 28, 2013                    **THOMPSON ✦ BOGRÁN, P.C.**

                                          /s/ Roy B. Thompson
                                        Roy B. Thompson, OSB 82501 *pro hac vice*
                                        15938 Quarry Road, Suite B-6
                                        Lake Oswego, OR 97035
                                        Telephone:     503-245-6600
                                        Facsimile:     503-244-8399
                                        E-mail:     roythompson@comcast.net

                                        Of Attorneys for Defendants Vigilant Video and
                                        The City of Port Arthur, Texas

## CERTIFICATE OF SERVICE

Exhibit 7
Page 2

# EXHIBIT A

Exhibit 7
Page 3

# THOMPSON ✦ BOGRÁN, P.C.
## A PROFESSIONAL CORPORATION

ROY B. THOMPSON
ALSO ADMITTED IN NEW YORK
L.L.M. IN TAXATION

AMY M. BOGRÁN
L.L.M. IN TAXATION

June 28, 2013

15938 SW QUARRY RD.
SUITE B-6
LAKE OSWEGO, OR  97035

TELEPHONE (503) 245-6600
FACSIMILE  (503) 244-8399

RoyThompson@comcast.net
AmyMBogran@comcast.net

The Honorable Rodney Gilstrap
US District Court for the
      Eastern District of Texas
100 East Houston Street
Marshall, TX 75670

    Re:    John B. Adrain v. Vigilant Video, Inc. and The City of Port Arthur, Texas
          Civil Action No. 2:10-CV-173
          Letter Brief Concerning Defendants' Motion for Summary Judgment
          as to new claims 30-32, 35-39, and 41-42 of the reexamined '669 patent

Dear Judge Gilstrap:

      Defendants Vigilant Video, Inc. and The City of Port Arthur, Texas (herein referred to collectively as "Defendants") respectfully request permission to file a motion for summary judgment as to the new claims 30-32, 35-39, and 41-42 ("new claims") of the reexamined '669 patent.

      The Defendants seek permission to file a motion for summary judgment in this matter on all matters in regards to the new claims now asserted against defendants by plaintiff in this action. The Court recently granted the plaintiff's Motion for Leave to Amend Disclosure of Asserted Claims and Infringement Contentions ("Motion to Amend") on May 13, 2013. *See Dkt. No. 181, Memorandum Opinion and Order.* The Court has previously granted defendants permission to file a Motion for Summary Judgment in this matter. *See Dkt. No. 120.* However, that Motion for Summary Judgment only dealt with the then existing claims asserted against defendants, claims 1-3 and 6-10 of the original '669 patent, of which claims 1-3 and 7-10 had either been cancelled or amended as a result of a reexamination of the '669 patent in the USPTO.

      In the Court's Memorandum Opinion and Order (which covered both the Motion to Amend and defendant's Summary Judgment Motion), the Court held that because "the Court has granted Plaintiff leave to amend its Infringement Contentions, none of the newly asserted claims depend from claim 51....Accordingly, Defendants' first request is **moot** and the Court turns to the issue of intervening rights." *Memorandum Opinion and Order, p. 4 (emphasis added; footnote omitted).* In the same opinion, the Court held that because the new terms (claims 30-32, 35-39, and 41-42 of the reexamined '669 patent) "are very similar except for an additional limitation in claim 30 that relates to infrared cameras" and that the "originally-asserted claims 2-3 and 6-10 are identical to the new-issued claims 31-32 and 35-39, except for

Exhibit 7
Page 4

The Honorable Rodney Gilstrap
Adrain v. Vigilant Video, Inc., et al
Letter Brief
June 28, 2013
Page 2

the latters' dependence on claim 30 rather than claim 1," then "no new terms need to be construed from the addition of these claims, and Plaintiff's infringement theories would remain the same." *See Memorandum Opinion and Order, pp. 3-4.* Thus, the Court's own statements indicate that the Court has not considered those arguments presented by the defendants' first motion for summary judgment as to "very similar" claims now asserted by plaintiff in this case.

In the requested motion for summary judgment, defendants intend to present arguments on the following issues, although defendants reserve the right to add any additional and relevant arguments not contained in this letter brief:

1.  The newly added claims are not pled in this case, because the Complaint filed and served upon Defendants in this action, attaches as Exhibit A, the original '669 patent, which does not reference or discuss in any manner the newly added claims. Although this area is subject to a current Motion to Dismiss filed by Defendants (*see Dkt. No. 200*), defendants seek to raise this matter on Summary Judgment as well;

2.  The newly added claims are invalid based upon prior art, which includes, but is not limited to, US Patent 5,097,328 (Boyette) and US Patent 4,878,248 (Shyu, et al), both of which disclose the use of infrared cameras. It should be noted that claims 6, 30-32, 35-39, and 41-42 of the reexamined '669 patent are subject to a Request for Reexamination with the USPTO, and that the Request for Reexamination has raised the invalidity issues related to prior art, including the Boyette and Shyu patents; and

3.  Those same issues raised by defendants in the first Motion for Summary Judgment which were not ruled upon by the Court due to the Court's finding that those issues were "moot" due to the Court's granting of plaintiff's Motion to Amend, including but not limited to whether or not defendants alleged infringing system compares "image data" to "image data" as alleged by plaintiff in this case.

If defendants are permitted to move the court for summary judgment, defendants will present evidence, in the form of a Declaration and/or Affidavit (and attached exhibits) which will set forth and explain the prior art as discussed above, and a Declaration and/or Affidavit (and attached exhibits) from at least one individual who has the appropriate technical expertise, experience and understanding of the Vigilant Video system, which is the focus of plaintiff's claims of infringement, the CarDetector System. This individual will express the opinion that Vigilant Video's CarDetector System does not compare image data to reference image data, nor does the system compare image data to any other image data.

FRCP 56(a) sets forth the standard of review for summary judgment motions and states in pertinent part: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." It has been noted that the purpose of summary judgment is "to isolate, and then terminate, claims and defenses that are factually unsupported." *Federal Civil Rules Handbook, p. 1120* (2012) citing *Celotex Corp. v. Catrett,* 477 US 317, 323-324, 106 Sct 2548, 2552-2553, 91 LEd2d 265 (1986).

Exhibit 7
Page 5

The Honorable Rodney Gilstrap
Adrain v. Vigilant Video, Inc., et al
Letter Brief
June 28, 2013
Page 3

   Although the Docket Control Order in this matter (*Dkt. No. 49*), set forth a dispositive motion filing deadline of April 3, 2013, the Court's granting of the Motion to Amend on May 13, 2013 came after the deadline, and thus such deadline set forth in the Docket Control Order should be disregarded in this matter.  Further, the only limitation in FRCP 56 as to the timing of a motion for summary judgment is as follows: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery." FRCP 56(b).  Because the plaintiff has acknowledged that discovery is ongoing as to the newly added claims, the defendants are within their rights to file a motion for summary judgment at this time.

   Therefore, Defendants have a good faith argument which, if presented in full form to the Court, will present evidence that if unrebutted, would be the basis for the grant of summary judgment in favor of the defendants.

        Sincerely,

        Roy B. Thompson

cc:  Mark Hubert
   Ted Polasek

Exhibit 7
Page 6

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

**STANDING ORDER REGARDING SUBMISSION OF LETTER BRIEFS FOR**
**CASES ASSIGNED TO JUDGE RODNEY GILSTRAP AND JUDGE ROY S. PAYNE**

For certain purposes, this Court requires parties to submit letter briefs to the Court. Where the Court has required submission of a letter brief, the filing procedure is as follows. The letter brief should be addressed to either United States District Judge Rodney Gilstrap or United States Magistrate Judge Roy S. Payne, as appropriate, and filed electronically by attaching the letter brief as an Exhibit to a Notice of Compliance referencing the order that directed the submission of the letter brief. Said Notice must comply with all applicable local rules. Attached hereto is an exemplar of a Notice of Compliance. All letter briefs, unless specifically directed otherwise by a case-specific order, are to be submitted without attachments.

This Order shall apply to all cases assigned to either United States District Judge Rodney Gilstrap or United States Magistrate Judge Roy S. Payne regardless of the division within the district in which such cases were originally filed.

**So ORDERED and SIGNED this 3rd day of February, 2012.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

Exhibit 8
Page 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| P., INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:12-CV-999 |
| | § | |
| D. CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

**NOTICE OF COMPLIANCE WITH COURT'S
MOTION PRACTICE ORDER**

In compliance with the Court's Motion Practice Order (Dkt. No. 20), D. Corporation files

this Notice of its letter to the Court requesting permission to file a motion for summary judgment

that no asserted claim of U.S. Patent No. 1,234,567 is infringed by the accused device.  A copy of

the letter is attached as Exhibit 1.

Respectfully Submitted,

Dated: January 20, 2012         By:     /s/ Charles B. Attorney

Charles B. Attorney (admitted *pro hac vice*)
CBAttorney@DFirm.com
DEFENSE FIRM, LLP
100 N. Legal St.
Anywhere, Texas 00000
Telephone: 800-555-1212
Facsimile: 866-555-1212
*Attorney for Defendant D. Corporation*



Exhibit 8
Page 2

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 20th day of January, 2012, the foregoing pleading was electronically filed with the Court. Pursuant to Local Rule CV-5, this constitutes service on the following counsel:

James K. Lawyer
JKLawyer@PEFirm.com
PATENT ENFORCERS FIRM LLC
100 Somewhere Else, CA 00000
Phone: 800-555-1212
Fax: 866-555-1212

By:   /s/ Charles B. Attorney
      Charles B. Attorney (admitted *pro hac vice*)
      CBAttorney@DFirm.com
      DEFENSE FIRM, LLP
      100 N. Legal St.
      Anywhere, Texas 00000
      Telephone: 800-555-1212
      Facsimile: 866-555-1212

# EXEMPLAR

Exhibit 8
Page 3

# EXHIBIT 1

# EXEMPLAR

Exhibit 8
Page 4

**DEFENSE FIRM, LLP**

**Charles B. Attorney**

January 20, 2012

800-555-1212 (t)
866-555-1212 (f)
CBAttorney@DFirm.com

The Honorable Rodney Gilstrap
U.S. District Court for the Eastern District of Texas
100 East Houston Street
Marshall, TX 75670

Re:     *P., Inc. v. D. Corp.*, Civil Action No. 2:12-CV-999

Dear Judge Gilstrap:

Defendant D. Corp. respectfully requests permission to file a motion for summary judgment of non-infringement of any asserted patent in the above-captioned patent infringement case.

D. Corp. is entitled to summary judgment for the following reasons . . . { }

For the foregoing reasons, D. Corp. respectfully requests permission to file a motion for summary judgment of non-infringement.

Respectfully submitted,

{ signature }

Charles B. Attorney

cc: all counsel of record (by ECF)

EXEMPLAR

Defense Firm, LLP, 100 N. Legal St., Anywhere, Texas 00000

Exhibit 8
Page 5

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| JOHN B. ADRAIN, | § § § | |
| Plaintiff, | § § | CASE NO. 2:10-cv-173-JRG |
| v. | § § | |
| VIGILANT VIDEO, INC. and THE CITY OF PORT ARTHUR, TEXAS, | § § § § | |
| Defendants. | § § | |

**ORDER**

The Court previously ordered that leave of Court must be obtained for certain motions. The following table lists the letter briefs seeking such leave (identified by general topics and docket numbers) and the Court's ruling on whether leave is granted or denied:

| Request | Ruling on Request |
|---|---|
| Defendants Vigilant Video, Inc. and The City of Port Arthur, Texas's Request to File a Motion for Summary Judgment on All Matters as to Claims 30-32, 35-39, and 41-42 (Dkt. No. 226) | **DENIED** |

**So Ordered and Signed on this**

**Jul 8, 2013**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

Exhibit 9
Page 1

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOHN B. ADRAIN, | § | |
| | § | |
| *Plaintiff*, | § | Case No. 2:10-cv-173 |
| | § | |
| vs. | § | **JURY TRIAL DEMANDED** |
| | § | |
| VIGILANT VIDEO, INC. and THE CITY OF | § | |
| PORT ARTHUR, TEXAS, | § | |
| | § | |
| *Defendants*. | § | |

**DOCKET CONTROL ORDER**

In accordance with the case status conference held herein on the 16th day of February, 2011, it is hereby

**ORDERED** that the following schedule of deadlines is in effect until further order of this court:

| | |
|---|---|
| 6/03/2013 | Jury Selection - 9:00 a.m. in **Marshall, Texas** |
| 5/20/2013 | Pretrial Conference – 9:30 a.m. in **Marshall, Texas** |
| 5/03/2013 | Parties are to serve objections to pre-trial disclosures, in accordance with ¶ 6 of the Discovery Order |
| 5/13/2013 | Joint Pretrial Order, Joint Proposed Jury Instructions and Form of the Verdict. |
| 5/13/2013 | **Motions in Limine Due** |
| | The parties are ordered to **meet and confer** on their respective motions *in limine* and **advise the court of any agreements in this regard by 3:00 p.m. three business days before** the pretrial conference.  The parties shall limit their motions *in limine* to those issues which, if improperly |

Exhibit 10
Page 1

introduced into the trial of the case would be so prejudicial that the court could not alleviate the prejudice with appropriate instruction(s).

5/13/2013     **Notice of Request for daily Transcript or Real Time Reporting of Court Proceedings.** If a daily trancript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Susan Simmons, at lssimmons@yahoo.com

4/30/2013     Response to Dispositive Motions (including *Daubert* motions)[1] **Responses to dispositive motions filed prior to the dispositive motion deadline, include *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e).  Motions for Summary Judgment shall comply with Local Rule CV56.**

4/3/2013     For filing Dispositive Motions and any other motions that may require a hearing (including *Daubert* motions)

3/22/2013     Defendant to Identify Trial Witnesses

3/15/2013     Plaintiff to Identify Trial Witnesses

1/31/2013     Discovery Deadline

_____     **30** Days after claim construction ruling
Designate Rebuttal Expert Witnesses other than claims construction
Expert witness report due
Refer to Discovery Order for required information.

---

[1] The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the court will assume that the party has no opposition."  Local Rule CV-7(e) provides that a party opposing a motion has **12 days, in addition to any added time permitted under FED. R. CIV. P. 6(e),** in which to serve and file a response and any supporting documents, after which the court will consider the submitted motion for decision.

Exhibit 10
Page 2

| _____ | **15** Days after claim construction ruling<br>Comply with P.R. 3-7. |
|---|---|
| _____ | **15** Days after claim construction ruling<br>Party with the burden of proof to designate Expert Witnesses other than claim construction<br>Expert witness report due<br>Refer to Discovery Order for required information. |
| 4/11/2012 | Claim construction hearing at 9:00 a.m., **Marshall, Texas.** |
| 3/30/2012 | Joint Claim Construction Chart P.R. 4-5(d) |
| 3/01/2012 | Mediation to be completed |
| 2/21/2012 | Comply with P.R. 4-5(c). |
| 2/14/2012 | Comply with P.R. 4-5(b). |
| 1/30/2012 | Comply with P.R. 4-5(a). |
| 1/15/2012 | Discovery deadline-claims construction issues. |
| 1/10/2012 | Respond to Amended Pleadings |
| 12/15/2011 | Amend Pleadings  / Add Parties<br>**(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit.  It is necessary to file a Motion for Leave to Amend after the amended pleadings date set forth herein.)** |
| 11/30/2011 | Comply with P.R. 4-3. |
| 11/10/2011 | Comply with P.R. 4-2. |
| 10/20/2011 | Comply with P.R. 4-1. |

Exhibit 10
Page 3

9/30/2011          Privilege Logs to be exchanged by parties

                   (**10/15/2011** a letter to the Court stating that there are no disputes as to
                   claims of privileged documents).

7/18/2011          Comply with P.R. 3-3 and 3-4

6/03/2011          Comply with P.R. 3-1 and 3-2

## OTHER LIMITATIONS

1.      All depositions to be read into evidence as part of the parties' case-in-chief shall
        be **EDITED** so as to exclude all unnecessary, repetitious, and irrelevant
        testimony; **ONLY** those portions which are relevant to the issues in controversy
        shall be read into evidence.

2.      The Court will refuse to entertain any motion to compel discovery filed after the
        date of this Order unless the movant advises the Court within the body of the
        motion that counsel for the parties have first conferred in a good faith attempt to
        resolve the matter. See Eastern District of Texas Local Rule CV-7(h).

3.      The following excuses will not warrant a continuance nor justify a failure to
        comply with the discovery deadline:

        (a)     The fact that there are motions for summary judgment or motions to
                dismiss pending;

        (b)     The fact that one or more of the attorneys is set for trial in another court on
                the same day, unless the other setting was made prior to the date of this
                order or was made as a special provision for the parties in the other case;

        (c)     The failure to complete discovery prior to trial, unless the parties can
                demonstrate that it was impossible to complete discovery despite their
                good faith effort to do so.

SIGNED this 3rd day of March, 2011.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

DOCKET CONTROL ORDER                                                                    Page 4

Exhibit 10
Page 4

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief [petition] complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(c)(2) and  Federal Rule of Appellate Procedure 21(d).

The brief contains 21 pages (4,251 words), excluding the parts of the brief exempted by rule.

2.      This brief [petition] has been prepared in a proportionally spaced typeface using Times New Roman, font size 14.

DATED August 2, 2013.                    _/s/ Roy B. Thompson_
                                         Roy B. Thompson
                                         Attorney for Petitioners

# United States Court of Appeals for the Federal Circuit

*In Re Vigilant Video, Inc., et al.*, Misc. No. _____

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by **THOMPSON BOGRÁN, P.C.**, Attorneys for Petitioners to print this document.  I am an employee of Counsel Press.

On the **2nd Day of August, 2012**, I served the within **Petition** upon:

C. Dale Quisenberry
dquisenberry@pqelaw.com
John T. Polasek
polasek@pqelaw.com
Jeffrey Scott David
jdavid@pqelaw.com
Polasek Quisenberry & Errington, LLP
6750 W. Loop South, Suite 920
Bellaire, TX 77401
(832) 778-6000

Elizabeth L. DeRieux
ederieux@capshawlaw.com
Capshaw DeRieux, LLP
114 E. Commerce Avenue
Gladewater, TX 75647
(903) 236-9800

The Honorable Rodney Gilstrap
United States District Court
for the Eastern District of Texas
United States Courthouse
100 E. Houston Street, Room 125
Marshall, Texas 75670
(903) 935-3868

**via Express Mail,** by causing 2 bound copies and a copy on disk to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal System.

Unless otherwise noted, 4 copies and a copy on have been hand-delivered to the Court on the same date as above.

August 2, 2013

/s/ John C. Kruesi, Jr.
John C. Kruesi, Jr.
Counsel Press